OSCN Found Document:PAYNE v. KERNS

 

 
 

 
 PAYNE v. KERNS
2020 OK 31
Case Number: 116978
Decided: 05/12/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 31, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JAMES C. PAYNE, Plaintiff/Appellant,
v.
JOEL KERNS and MISSY ELDRIDGE, Defendants/Appellees.
ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION I
Â¶0 The plaintiff/appellant, prisoner, sued various defendants for his detention lasting several months past the end of his sentence. The district court granted summary judgment in favor of the defendants. The Oklahoma Court of Civil Appeals affirmed. This Court granted certiorari on the remaining issue preserved for our review, i.e., whether a private right of action under Article 2 Section 9 of the Oklahoma Constitution exists under the facts of this case. We hold a private right of action existed at the time the plaintiff/appellant was detained past his sentence and remand for further proceedings consistent with this opinion.
COURT OF CIVIL APPEALS' OPINION VACATED IN PART; JUDGMENT REVERSED AND REMANDED
J. Derek Ingle, Boettcher Devinney Ingle & Wicker, PLLC, Tulsa, OK, for Plaintiff/Appellant
Wellon B. Poe, Collins Zorn & Wagner, P.C., Oklahoma City, for Defendants/Appellees
COMBS, J.:
I. FACTS AND PROCEDURAL HISTORY
Â¶1 On February 8, 2010, the appellant, James C. Payne (Payne), pled nolo contendere to the crime of stalking in Case No. CF-2010-27, District Court of Pittsburg County, State of Oklahoma. He received a five-year deferment with special rules and conditions of probation. He was required to have no contact with the stalking victim. In addition, Payne pled guilty to violating a protective order in many other cases filed in Pittsburg County related to the same victim and was sentenced to six months in the county jail. The sentences were to run concurrently. He received extra credits and was released from custody on May 5, 2010. A month later, on June 10, 2010, the district attorney filed a motion to accelerate the deferred judgment for probation violations. It alleged Payne had been contacting and harassing the victim. The district court issued a felony warrant and Payne was arrested and booked into jail by the Pittsburg County Sheriff's Office on June 11, 2010. Payne did not post bail and remained in the county jail.
Â¶2 On August 23, 2010, the district court executed a minute order finding Payne guilty of violating the terms of his deferred sentence. He was sentenced to a term of five years imprisonment with four years suspended and one year to serve in the Department of Corrections (DOC). Payne also received credit for the time he had been serving in the county jail since his June 11, 2010 arrest. Therefore, the one year sentence was to expire on June 11, 2011. A formal Judgment and Sentence was filed on May 13, 2011 and dated October 15, 2010. This occurred less than a month of when Payne's sentence was set to expire. The record reflects the Pittsburg County Sheriff's Office received the Judgment and Sentence on May 17, 2011. The Judgment and Sentence ordered Payne into DOC custody and directed the Sheriff's office to transfer Payne to DOC. It provided:
In the event the above sentence is for incarceration in the Department of Corrections, the Sheriff of Pittsburg County, Oklahoma is ordered and directed to deliver the Defendant to the Lexington Assessment and Reception Center at Lexington, Oklahoma, and leave therewith a copy of this Judgment and Sentence to serve as warrant authority of the Sheriff for the transportation and the imprisonment of the Defendant as herein before provided. The sheriff to make due return to the clerk of this Court, with his proceedings endorsed thereon.
The Sheriff's Office of Pittsburg County did not transfer Payne to the Lexington Assessment and Reception Center (LARC) until September 6, 2011, almost three months past the end of his sentence. Payne was released that same day without serving any of his time in DOC custody.
Â¶3 Payne filed a Notice of Governmental Tort Claims on February 27, 2012 against the State of Oklahoma, Oklahoma Department of Corrections, Pittsburg County Jail, Pittsburg County Sheriff's Department, Pittsburg County Commissioners Chairman Gene Rogers, Commissioner Kevin Smith, and Commissioner Ronnie Young, Pittsburg County Sheriff Joel Kerns, and Pittsburg County Jail Administrator Missy [sic] Eldridge.
[1] The claim was denied on March 30, 2012. On September 6, 2012, he filed a Petition in the District Court of Pittsburg County (Case No. CJ-2012-233) against the same Defendants. He alleged various violations of his constitutional rights under the United States Constitution, federal statute (42 U.S.C. Â§ 1983) and tort causes of action related to his extended incarceration past his sentence expiration. Less than a month later, October 2, 2012, the case was removed to the United States District Court for the Eastern District of Oklahoma (Case No. 12-CV-407) based upon federal question jurisdiction. After some litigation the parties attempted to settle the action and the federal case was dismissed without prejudice by an Administrative Closing Order filed July 15, 2013.
Â¶4 On April 11, 2014, Payne re-filed his Petition against the same Defendants in the District Court of Pittsburg County (Case No. CJ-2014-73). The Petition was identical to the one filed in CJ-2012-233, with the addition of alleged violations of his rights under the Oklahoma Constitution. Payne alleged the Defendant's actions violated his rights under the following sections of Article II of the Oklahoma Constitution:
Â§2. All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry.
Â§7. No person shall be deprived of life, liberty, or property, without due process of law.
Â§9. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted.
Â§30. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized. 
Based upon these state constitutional violations and this Court's jurisprudence in Washington v. Barry, 2002 OK 45, 55 P.3d 1036 and Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, the Petition asserted Payne had a private right of action against the Defendants notwithstanding the Oklahoma Government Tort Claims Act (OGTCA), 51 O.S. Â§ 151, et seq.
Â¶5 On January 8, 2015, the Defendants again filed a Notice and Petition for Removal in the United States District Court for the Eastern District of Oklahoma (Case No. 15-CV-10). The case was removed and the parties litigated the matter in federal court for almost two years. On January 14, 2015, the Defendants, State of Oklahoma and the Oklahoma Department of Corrections, moved to dismiss all claims against those defendants. The court granted their motion on September 17, 2015. Also, on January 14, 2015, the Defendants Pittsburg County Jail, Pittsburg County Sheriff's Department, Sheriff Joel Kerns, Pittsburg County Commissioners Gene Rogers and Kevin Smith, and Pittsburg County Jail Administrator "Missi" Eldridge moved to enforce the settlement agreement from 2013 or in the alternative to dismiss the action against those defendants. The court denied their motion on September 17, 2015.
[2] On November 25, 2015, the Defendants, Pittsburg County Jail, Pittsburg County Sheriff's Office, County Commissioner Gene Rogers and County Commissioner Kevin Smith, filed a Motion to Dismiss. A few days later, December 10, 2015, Payne filed a Partial Dismissal of Defendants, County Commissioners Gene Rogers, Kevin Smith and Ronnie Young, the Pittsburg County Sheriff's Department and the Pittsburg County Jail. On June 8, 2016, by Minute Order, the court granted the Defendants' Motion to Dismiss and Payne's Partial Motion to Dismiss and stated "[t]he only defendants remaining are Pittsburg County Sheriff Joel Kerns and Pittsburg County Jail Administrator Missy Eldridge."
Â¶6 On December 7, 2016, Payne filed a Motion for Partial Dismissal and Remand wherein he requested to dismiss all his federal claims and have the matter remanded to the state district court to determine his Oklahoma state law claims. On December 13, 2016, the court entered an Order. The Order notes Payne's federal claims are dismissed by agreement of the parties but it found no compelling reason to retain jurisdiction over Payne's "pendent state Bosh claim." The court held "any issues the parties may have under Bosh should be decided by the Pittsburg County, Oklahoma District Court including any defenses regarding individual capacity. This action is therefore remanded to the Pittsburg County, Oklahoma District Court." On February 23, 2017, the District Court of Pittsburg County (Case No. CJ-2014-73) entered a status and scheduling conference journal entry noting the case was on remand from the federal district court "on issues of state law only."
Â¶7 On April 7, 2017, the remaining Defendants, "Sheriff Joel Kerns" (Kerns) and "Jail Administrator Missi Eldridge" (Eldridge) filed a Motion for Summary Judgment in the District Court of Pittsburg County. They argued 1) the remaining Defendants were not proper parties under a Bosh claim, 2) Payne had no private right of action against the Defendants under the Oklahoma Constitution, 3) the constitutional claims are time barred, 4) Payne abandoned his state tort law claims, 5) the Defendants were not liable for the state tort law claims, and 6) the state law claims should be dismissed based upon promissory estoppel. On August 8, 2017, the district court entered a Minute Order granting the Defendants' motion. The Minute Order states:
After hearing argument of counsel, review of the parties' motions, briefs, attached exhibits, and review of the relevant provisions of the Oklahoma Constitution, the OGTCA, applicable statute and case law, including, but not limited to, Bosh v. Cherokee Bldg. Authority, 2013 OK 9, GJA v. OK DHS 2015 OK CIV APP 32, and Deal v. Brooks 2016 OK CIV APP 81; the Court finds that Defendant's Motion for Summary Judgment, in its entirety, should be and is hereby GRANTED. This Court is not comfortable extending the analysis and holding in Bosh to claims asserted in this action, and therefore the Court finds that there is no substantial controversy as to any material fact.
The Defendants were ordered to prepare a journal entry. On December 5, 2017, the Defendants filed a Motion to Settle Journal Entry with an attached proposed journal entry. The Defendants asserted in their motion "[t]he Minute Order reflects the general rulings of the Court but does not set forth sufficient factual and legal conclusions necessary for any appeal." The proposed journal entry included findings of fact and conclusions of law. Its conclusions of law section asserted the individual Defendants are not proper parties because they are immune from liability under the OGTCA and that the court declines to extend the analysis in Bosh to recognize a private right of action under the Oklahoma Constitution to the facts of this case. In addition, the Defendants provided it was unnecessary to address the other defenses they had raised, i.e., improper parties, promissory estoppel, and statute of limitations. Payne responded to the motion and asserted the proposed journal entry does not accurately reflect the court's ruling. The court, he asserted, only focused on the Bosh claim and not on any other issue raised by the Defendants. He noted it was apparent that the Defendants themselves do not construe the court's statement of "in its entirety" to include every defense argued for in the Motion for Summary Judgment. He requested the court enter a journal entry that reflected the Minute Order. The court apparently agreed with Payne and denied Defendants' Motion to Settle Journal Entry. It entered a Journal Entry and Order on April 4, 2018, which was identical to the Minute Order. On May 1, 2018, Payne appealed.
Â¶8 The only issues Payne raised in his Petition in Error were whether the district court erred by not finding sections 2, 7, 9 and 30 of Article II of the Oklahoma Constitution created a private right of action for his delayed release pursuant to Washington v. Barry, 2002 OK 45, 55 P.3d 1036, Bosh v. Cherokee County Governmental Building Authority, 2013 OK 9, 305 P.3d 994, and Deal v. Brooks, 2016 OK CIV APP 81, 389 P.3d 375 (approved for publication by the Oklahoma Supreme Court). The matter was assigned to the Oklahoma Court of Civil Appeals, Division I. The court filed its opinion on May 17, 2019, affirming the district court's Journal Entry and Order granting summary judgment. The Oklahoma Court of Civil Appeals opinion is paraphrased as follows: 1) a right of action under Okla. Const. art. 2, Â§30 applies only to citizens who are seized, arrestees and pre-incarcerated detainees, pursuant to Bosh, 2013 OK 9, Â¶22, and therefore it is not applicable to Payne who was incarcerated and whose private right of action, if one exists, would be under Okla. Const. art. 2, Â§9; 2) the court focused on Bosh and Washington which concerned a private right of action based upon "excessive force," and found the conduct here was not the type that would rise to the level of a constitutional violation for cruel and unusual punishment and therefore it would not expand an Okla. Const. art. 2, Â§9 right of action to the facts of this case; 3) the conduct at issue here was not shocking to the conscience and did not violate substantive due process protections found in Okla. Const. art. 2, Â§7; and 4) the Oklahoma Supreme Court has never recognized a private right of action pursuant to Okla. Const. art. 2, Â§2.
Â¶9 Payne filed a Petition for Certiorari with this Court on July 19, 2019. The petition was granted on January 13, 2020. Payne's petition only challenges the Oklahoma Court of Civil Appeals' ruling concerning a private right of action under Okla. Const. art. 2, Â§9 (cruel or unusual punishments). We therefore affirm the opinion of the Oklahoma Court of Civil Appeals concerning sections 2, 7, and 30 of Article II of the Oklahoma Constitution and turn to the issue preserved for our review, i.e, whether there exists a private right of action under Okla. Const. art. 2, Â§9 under the facts of this case. See Oklahoma Association of Broadcasters, Inc. v. City of Norman, 2016 OK 119, Â¶Â¶12-13, 390 P.3d 689; Hough v. Leonard, 1993 OK 112, Â¶1, 867 P.2d 438. This matter was assigned to this office on January 13, 2020.
II. STANDARD OF REVIEW
Â¶10 Whether summary judgment was properly entered is a question of law which we review de novo. Manley v. Brown, 1999 OK 79, Â¶ 22, 989 P.2d 448, 455. In a de novo review, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact. Kluver v. Weatherford Hosp. Auth., 1993 OK 85, Â¶ 14, 859 P.2d 1081, 1084. Like the trial court, we examine the pleadings and summary judgment evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. Carmichael v. Beller, 1996 OK 48, Â¶ 2, 914 P.2d 1051, 1053. We view the facts and all reasonable inferences arising therefrom in the light most favorable to the non-moving party. Id. The purpose of summary adjudications is not to substitute a trial by affidavit for one by jury, but rather to afford a method of summarily terminating a case when only questions of law remain. Martin v. Aramark Services, Inc., 2004 OK 38, Â¶12, 92 P.3d 96. When uncontroverted proof lends support to conflicting inferences, the choice to be made between the opposite alternatives does not present an issue of law but rather one for the trier of fact. Walters v. J.C. Penny Co., Inc., 2003 OK 100, Â¶13, 82 P.3d 578. Even when basic facts are undisputed, motions for summary judgment should be denied if, under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts. Bird v. Coleman, 1997 OK 44, Â¶20, 939 P.2d 1123. It is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues. Bivins v. State of Oklahoma, ex rel. Oklahoma Memorial Hospital, et al., 1996 OK 5, Â¶19, 917 P.2d 456. An appellate court cannot craft an initial decision upon an untried question and then direct that it be followed on remand. Id.
III. ANALYSIS
A. A PRIVATE RIGHT OF ACTION FOR DETENTION BEYOND THE EXPIRATION OF ONE'S SENTENCE EXISTS UNDER OKLA. CONST. ART. 2, Â§9.
Â¶11 Payne asserts his delayed release amounted to cruel or unusual punishment in violation of Okla. Const. art. 2, Â§9. In 2002, this Court first recognized a potential private right of action under Okla. Const. art. 2, Â§9 for the use of excessive force upon a prisoner when the defendants were immunized from liability under the OGTCA. Washington v. Barry, 2002 OK 45, 55 P.3d 1036. Being a first impression issue, this Court turned to federal precedent to establish a standard.[3] Id., Â¶Â¶9-10. The opinion relied heavily upon Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251, which we found was determinative of the appeal. Whitley spelled out what was required to make actionable the conduct of prison officials when a prisoner resists the maintenance of order. Id., Â¶11. That case involved an alleged violation of a prisoner's right to be protected from cruel and unusual punishment under the Eight Amendment of the United States Constitution.[4] The Supreme Court focused on the occurrence of unnecessary and wanton pain and suffering. It held whether the measures taken inflicted unnecessary and wanton pain and suffering turns on whether the force applied was made in a good faith effort to maintain or restore discipline or was done maliciously and sadistically for the very purpose of causing harm. Id. We noted, in determining whether the conduct was done maliciously and sadistically, Whitley found factors such as the need for the application of force, the relationship between the need and the amount of force, and the extent of injury inflicted should be considered. Id. In affirming the trial court's dismissal, we held plaintiff could prove no set of facts that would entitle him to relief. Id., Â¶14. His allegations simply did not support the inference of "wantonness in the infliction of pain" which Whitley requires before a right of action will be held to exist. Id.
Â¶12 Over a decade after Washington, this Court reaffirmed its holding and found no reason why a private right of action for excessive force should not also be extended to pre-incarcerated detainees and arrestees pursuant to Okla. Const. art. 2, Â§30. Bosh v. Cherokee County Bldg. Authority, 2013 OK 9, 305 P.3d 994. In Bosh this Court answered a federal certified question and held Okla. Const. art. 2, Â§30 provides a private right of action for excessive force notwithstanding the limitations under the OGTCA.[5] Id., Â¶23. We held in Â¶23 that:
The OGTCA cannot be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens. To do so would not only fail to conform to established precedent which refused to construe the OGTCA as providing blanket immunity, but would also render the Constitutional protections afforded the citizens of this State as ineffective, and a nullity.
The Oklahoma Court of Civil Appeals examined this language several years later.
Â¶13 In GJA v. Oklahoma Dept. of Human Services, a father sued the Department of Human Services (DHS) and many John Doe employees for failing to stop abuse of his children while they were in the custody of their mother. 2015 OK CIV APP 32, 347 P.3d 310. The father alleged DHS violated the children's constitutional right to Due Process of Law pursuant to Bosh. Id., Â¶22. DHS moved to dismiss arguing Bosh did not create an actionable claim under the facts of this case. The court determined the first inquiry is whether Bosh should be limited to its facts and holdings or does the decision stand for the proposition that the Supreme Court of Oklahoma recognizes a broader scope of actionable claims based upon violations of constitutional rights. Id., Â¶26. It noted clearly the father's allegations did not involve the same or similar circumstances as in Bosh, but such a limitation fails to account for the reasoning in Bosh. Id., Â¶Â¶28-29. After examining the quoted language in paragraph 12 of this opinion, the court determined:
[t]he Court has not only adjudicated a specific claim based upon a set of facts, but also the Court made a statement of policy (upholding constitutional guarantees and protections) as its broader holding. The Court then specifically applied that broader policy statement holding to the facts of the case.
Id., Â¶30. It found, Bosh stood for the proposition that the protections and guarantees afforded the citizens by the state and federal constitutions represented the highest values of the people and the Supreme Court recognizes a broader scope of actionable claims based upon violations of constitutional rights. Id., Â¶Â¶31-32. The court further found that a court's role as gatekeeper will serve to focus Bosh claims upon those acts or inactions which rise to the level of a constitutional claim without having to limit the interpretation of Bosh. Id., 35.
Â¶14 Following our decision in Bosh, the state legislature amended the OGTCA. On April 21, 2014, H.B. No. 2405 became effective. 2014 Okla.Sess.Laws c. 77. The Act extended the State's immunity from suit to torts arising from alleged deprivations of constitutional rights. In Barrios v. Haskell County Public Facilities Authority, we noted, prior to this amendment, the OGTCA did not expressly include immunity from such torts and therefore this Court acknowledged common law tort remedies for claims arising under the constitution. 2018 OK 90, Â¶9, 432 P.3d 233. In Barrios we were asked to answer a federal certified question, i.e., "do sections 7 and 9 of Article II of the Oklahoma Constitution allow an inmate to bring a tort claim for denial of medical care notwithstanding the OGTCA's provisions providing immunity to the State from torts arising out of the 'provision, equipping, operation or maintenance of any prison, jail or correctional facility.'" Id., Â¶1. We acknowledged the Legislature's long-recognized power to define the scope of the State's sovereign immunity and held the amendments in H.B. 2405 foreclosed our ability to expand the common law in a manner inconsistent with statutory law. Id. Â¶12. Therefore, "because these 'constitutional' torts are now clearly 'torts' governed by the [O]GTCA, the [O]GTCA's specific prohibition against tort suits arising out of the 'operation or maintenance of any prison, jail or correctional facility' bars the claims at issue here." Id. Barrios, however, is not relevant to the present case. Payne's delayed release occurred in 2011, well before H.B. 2405 became effective. The Oklahoma Constitution further limits the effectiveness of H.B. 2405 and our decision in Barrios. Article 5, Section 52 of the Oklahoma Constitution provides:
The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State. After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit.
Therefore, at the moment this cause of action accrued and at the time the suit was commenced, tort remedies for claims arising under the constitution were not expressly foreclosed.
Â¶15 Neither Washington nor Bosh limited a private right of action to claims based upon excessive force. Since 2002, this Court has recognized the potential for a private right of action for violations of Okla. Const. art. 2, Â§9. We hold a private right of action also exists for detention beyond the expiration of one's sentence under this section. Next we must establish the proper standard to be used to determine if a violation of Okla. Const. art. 2, Â§9's protection against cruel or unusual punishments has occurred.
B. THE DEFENDANTS' STATE OF MIND IS DISPOSITIVE TO DETERMINING WHETHER PAYNE'S CONSTITUTIONAL RIGHT TO BE PROTECTED FROM CRUEL AND UNUSUAL PUNISHMENT HAS BEEN VIOLATED 
Â¶16 The opinion of the Oklahoma Court of Civil Appeals interpreted Payne's cruel or unusual punishment claims as one based upon "excessive force" and focused on the standard discussed in Washington. However, the standard for actions based upon detention past the expiration of one's sentence is not identical. As in Washington, we turn to federal precedent to help establish the standard in this first impression issue.
Â¶17 In Sample v. Diecks, a prisoner was held over nine months past the expiration of his sentence. 885 F.2d 1099 (3d Cir. 1989). Upon his release, Sample filed a damages suit against Diecks, the senior records officer in the correctional facility, and Robinson, the Commissioner of the bureau of corrections pursuant to 42 U.S.C. Â§ 1983. Id. at 1103. A motion for summary judgment was filed and the magistrate determined summary judgment was inappropriate. Id. at 1106. It found Diecks violated the Eight Amendment's prohibition of cruel and unusual punishment by failing to take any meaningful action in response to Sample's complaints. Id. at 1103. The magistrate also found Robinson violated Sample's right to procedural due process under the Fourteenth Amendment by failing to establish a system for a prisoner to challenge the computation of his sentence. Id. The district court adopted the findings of the magistrate. On appeal, the United States Court of Appeals for the Third Circuit affirmed the district court's holding against Diecks but reversed and remanded on its findings concerning Robinson. Id. at 1119.
Â¶18 The appellate court determined whether the detention beyond expiration of a sentence violates the Eight Amendment requires two things: 1) was the detention "punishment;" and 2) was it "cruel and unusual." Sample, at 1108. It found detention beyond one's term no doubt constitutes punishment. Id. Concerning cruel and unusual punishments, the court explained the Eight Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime. Id. One class of unnecessary and wanton wrongs and the one most relevant here is those that are "totally without penological justificiation." Id. The court first noted that once any deterrent and retributive purposes were fulfilled there was no penological justification for a prisoner's continued detention. Id. However, it found that elimination of all errors in many instances would be unfeasible and accidents or mistakes are a necessary cost of any prison system and aren't repugnant to the conscience of mankind and do not violate the Eight Amendment. Id. at 1108-9. The court looked at the state of mind of the prison administrators and found more or less deference should be given based upon the situation. Id. at 1109. It determined the degree to which a harm is unnecessary in the sense of being unjustified by the exigencies of prison administration will affect the state of mind requirements a plaintiff must meet to demonstrate a prison official violated the Eight Amendment. Id.
Â¶19 The court found the judiciary should give a high level of deference to prison officials in cases of a prison riot, as in Whitley. Sample, at 1109. In such a case, subjecting prison officials to suits based upon an absence of due care or even deliberate indifference would result in second guessing and have a deleterious effect on the broad ambit of discretion prison officials need in such situations. Id. An official acting in good faith within that discretion, although in the process injuring a prisoner, has not inflicted cruel and unusual punishment upon that inmate. Id. However, a lesser showing of deference is required in cases of deprivation of medical care. In such situations simple malpractice under a common law negligence standard without a more culpable state of mind is not enough; but where prison officials or doctors act with deliberate indifference to serious medical needs of prisoners, they have unnecessarily and wantonly inflicted pain on inmates and thereby violated the Eight Amendment. Id. 
Â¶20 The court found cases involving detention for a significant period beyond the term of one's sentence inflicts a harm similar to medical deprivation cases and deserved a lower level of deference. Id. In such situations, it rejected a Whitley good faith standard and found a prisoner held beyond his term need not demonstrate a prison official's role in the unwarranted detention amounted to a knowing willingness that the unjustified detention would occur or that the official acted maliciously or sadistically for the very purpose of causing harm. Id. The court held: "there can be no eight amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant to whether the plaintiff suffers an unjustified deprivation of liberty." Id. at 1110. 
Â¶21 After determining the Eight Amendment can be violated by a showing of deliberate indifference, the court explained the requisite elements a plaintiff must demonstrate. It found:
[A] plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.
Sample at 1110. The court noted that not all officials who are aware of a problem exhibit indifference by failing to resolve it. For example, a warden does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place for others to pursue the matter. Id. However, if a prison official knows, given his or her job description or role he or she has assumed in the administration that the sentencing matter will not likely get resolved unless he or she addresses it or refers it to others, then it is more likely the requisite attitude will be present. Id. 
Â¶22 In 2010, this Court vacated an Oklahoma Court of Civil Appeals decision and reversed in part the decision of the trial court granting summary judgment. Estate of Crowell v. Board of County Commissioners, 2010 OK 5, 237 P.3d 134. We held reasonable minds could differ on the issue of whether the sheriff and jail personnel acted with deliberate indifference in the delay to provide medical treatment to an inmate. Id., Â¶37. A prisoner died in custody due to delayed receipt of medical attention. The personal representative of the prisoner's estate brought a civil rights action under 42 U.S.C. Â§1983 based upon a violation of the Eight Amendment's protection against cruel and unusual punishments. We held a prisoner must show acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Id., Â¶26. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. Id., Â¶33. It is a state of mind more blameworthy than negligence and requires more than ordinary lack of due care for the prisoner's interests or safety. Id. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he or she must also draw the inference. Id., Â¶34. We noted, the sheriff, as a supervisory authority, could be held liable under Â§1983 if an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his or her exercise of control or direction, or his or her failure to supervise. Id., Â¶30. The sheriff has a statutory duty to provide medical care and is responsible for the proper management of the jail and proper conduct of the jail personnel. Id., Â¶31. As a result, a sheriff is accountable in a Â§1983 action whenever he or she knew or should have known of misconduct, and yet failed to prevent future harm. Id. Where liability is based on what the defendants knew or should have known, "self-imposed ignorance" on the part of the defendants is not determinative, and a plaintiff may show the matters the defendants knew or should have known by circumstantial evidence and inference. Id. (citing Copeland v. Tela Corp., 1999 OK 81 at Â¶Â¶8 and 10, 996 P.2d 931).
Â¶23 A year later, the Oklahoma Court of Civil Appeals reversed a judgment dismissing a petition with similar facts to Crowell. Edelen v. Board of Commissioners of Bryan County, 2011 OK CIV APP 116, 266 P.3d 660. The opinion quoted Crowell's language concerning a sheriff's liability, i.e., a sheriff may be accountable whenever a sheriff knew or should have known of the misconduct and yet failed to prevent future harm. Id., Â¶8. The court found "Edelen's petition states a claim against the Sheriff based on a potential violation of the Eight Amendment to the United States Constitution pursuant to 42 U.S.C. Â§1983. It would also establish a violation of Okla. Const. art. 2, Â§9 [citing Washington]." Id.
IV. CONCULSION
Â¶24 In the present matter, the Journal Entry and Order granting summary judgment was inappropriate. The district court ruled it was uncomfortable in extending the analysis and holding in Bosh to the claims asserted in this action and therefore there was no substantial controversy as to any material fact. The district court made no factual determinations concerning whether the remaining defendants showed the requisite state of mind to violate Payne's constitutional right to be protected from "cruel or unusual punishments" under the Oklahoma Constitution. Having determined a private right of action existed at the time Payne was detained past his sentence under Okla. Const. art. 2, Â§9, we reverse and remand for further proceedings consistent with this opinion.
COURT OF CIVIL APPEALS' OPINION VACATED IN PART; JUDGMENT REVERSED AND REMANDED
Â¶25 Gurich, C.J., Kauger (by separate writing), Edmondson, Colbert and Combs, JJ., concur.
Â¶26 Darby, V.C.J., Winchester (by separate writing), Kane and Rowe (by separate writing), JJ., dissent.
FOOTNOTES
[1] The record reflects the proper spelling is "Missi." Many filings spell her name Missy and some spell it Missi. The record contains an affidavit signed by the defendant as Missi. Where applicable her name will be spelled in the manner of the referenced filing.
[2] On May 16, 2016 the court entered a Settlement Conference Order setting the conference for October 26, 2016 for the remaining defendants. The October 26, 2016 Minutes of the settlement conference reflects the conference was concluded without settlement.
[3] In Washington the trial court dismissed Washington's petition and the Oklahoma Court of Civil Appeals affirmed. Washington had refused to allow another prisoner be placed in his cell. The guards had to restrain him with handcuffs and leg restraints. Washington refused to allow removal of these restraints therefore the guards allowed him to sleep in the restraints. The next day the guards had to forcibly remove the restraints which Washington would not give up voluntarily. The guards videotaped the incident and had a nurse on the scene. His injuries were determined to be minor and he did not seek medical attention.
[4] The Eight Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Article 2, Section 9 of the Oklahoma Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." Okla. Const. art. 2, Â§9. The two constitutional provisions are essentially identical. The only difference is the conjunction used between the words "cruel" and "unusual."
[5] The plaintiff, Daniel Bosh (detainee), was attacked by jailers while he was being booked into the jail. He was severely injured. He originally filed suit in state court asserting civil rights claims under 42 U.S. Â§1983. The case was removed to federal court. Based upon a recent decision of the Oklahoma Court of Civil Appeals in Bryson v. Oklahoma County ex rel. Oklahoma County Det. Ctr., 2011 OK CIV APP 98, 261 P.3d 627, which determined a claim for excessive force of a detainee is based upon Okla. Const. art. 2, Â§30, the federal court allowed Bosh to amend his complaint to assert such a claim.

KAUGER, J., concurring: 
I.
JAMES C. PAYNE v. JOEL KERNS and MISSY ELDRIDGE,
Case No. 116,978
Â¶1 I concur with the majority opinion. I am writing to address the spate of recent troubling incidents involving the Department of Corrections (DOC) and access to justice. In this cause, the DOC extended the prisoner's confinement for more than 3 months past his sentence. The failure of the DOC to timely release him is exacerbated by the absence of a final order.
Â¶2 We do not recognize the minute order entered in this cause by the district court as a final appealable order. [1] When the Court of Criminal Appeals does not receive a final order, jurisdiction is declined. The failure of the trial court to prepare a final order denies the prisoner the right of access to the Court.
Â¶3 Were the prisoner held in a federal prison, the United States would be liable for false imprisonment. In Millbrook v. United States, 569 U.S. 50, 133 S.Ct. 1441 (2013), the unanimous Court held that the waiver of sovereign immunity based on the law enforcement provision in the Federal Torts Claims Act extends to acts or omissions of law enforcement officers that arise during the scope of their employment. This cause should be remanded to determine if the material facts support relief under Oklahoma law. 
II. MARSEN VOLTAIRE ELIAS v. STATE
Case No. 118,074
Â¶4 Marsden Elias (Elias) entered a plea of nolo contendre to a felony offense on November 16, 2004. The trial court sentenced him to fifteen years with the first three years to be served in the custody of the Department of Corrections with the balance as supervised probation. When Elias committed another felony offense in 2008, he pled guilty and was sentenced to six months in the county jail and four years probation. Because the first sentence included a finite time for incarceration, followed by probation, no consideration was given to the maximum term that Elias would have to serve.
Â¶5 Because Elias had committed two offenses, the State, on June 18, 2010, filed an Application to Revoke the Suspended Sentences. During the December 16, 2010, revocation hearing, the transcript reflects that the trial judge stated he would show on the record that the crime to which Elias had pled guilty in 2004, was not an eighty-five percent crime. The judge, the prosecutor, and defense counsel agreed that it was not.[2] The court minute regarding the Application to Revoke/Accelerate shows that Elias was not sentenced to an eighty-five percent crime.[3] The trial court later recanted its opinion that the crime was not an eighty-five percent crime. However, the trial court did nothing to correct its mistake, other than observe that it was incorrect when it denied Elias's Application for Post Conviction Relief.[4] The Department of Corrections' records show that it determined Elias's term of incarceration to be subject to the eighty-five percent rule.[5] The Minute Order, filed October 31, 2012, noted that Elias needed to file an action against the Department of Correction to address the interpretation of his sentence.[6] 
Â¶6 When a trial court commits a mistake seriously affecting a substantial right, such as the length of the required time of incarceration, the trial court must correct the mistake to conform the sentence accurately with the law. [7] Even so, it is not up to the Department of Corrections to unilaterally correct a mistake.[8] The power to define and to fix the punishment for crimes is vested in the legislature.[9] The imposition of the sentence within the limits prescribed by the legislature is purely a judicial function.[10] The Legislature has invested the Department of Corrections with the authority to ensure a judicial sentence is carried out as ordered by the district court. [11] Nevertheless, the court's authority to impose a sentence cannot be, and is not delegated to an administrative body such as the Department of Corrections.[12] 
Â¶7 Someone needs to fix this! 

III.
GLEN FOLSOM v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Case No. 118,395 cons. with 118,411
A.
FAILURE TO ENTER AN APPEALABLE ORDER BY THE TRIAL COURT 
Â¶8 Glen Folsom (prisoner/Folsom) is an indigent inmate incarcerated under the custody of the DOC at Oklahoma State Penitentiary. On January 16, 2019, the District Court entered a court minute in the District Court of Pottawatomie County Case No. CF-2002-327 denying Folsom's application for post-conviction relief. Title 22 O.S. 2011 Â§1084, requires a District Court to issue a "final judgment" in all post conviction proceedings. The pertinent part of Â§1084 provides:

. . .The court shall make specific findings of fact and state expressly its conclusions of law, relating to each
issue presented. This order is a final judgment.
Despite the lack of a final judgment, Folsom filed a post-conviction appeal on May 24, 2019, in the Court of Criminal Appeals Case No. PC-2019-379. The Court of Criminal Appeals summarily dismissed his appeal for lack of a formal order, but it did not direct the trial court to comply with its statutory duty. 
Â¶9 On January 3, 2020, Folsom filed a "Motion for Relief" in Court of Criminal Appeals Case No. MA-2020-9 seeking extraordinary relief from the District Court's failure to enter the requisite final judgment. On January 22, 2020, the Court of Criminal Appeals declined to exercise jurisdiction over the matter finding Folsom had not served the adverse party with his request for relief.
Â¶10 On January 15, 2020, Folsom filed a "Petition in Error" with this Court in Case No. 118,574. Folsom challenges the Court of Criminal Appeals October 7, 2019, order in Case No. PC-2019-379 declining jurisdiction of his post-conviction appeal. Folsom further challenges his criminal convictions. Contemporaneous with this Petition, Folsom filed a "Motion to File Out of Time" seeking this Court to consider his appeal despite its alleged untimeliness.
Â¶11 On that same date, Folsom also filed a petition in error to review a certified interlocutory order raising the same challenges to his criminal convictions. However, Folsom also complained that the District Court of Pottawatomie County had not entered a final judgment in the post-conviction proceedings contrary to the Rules of the Court of Criminal Appeals, Rule 5.4(A) o the Rules of the Court of Criminal Appeals which provides:

The Judge assigned to adjudicate the application for
post-conviction relief shall prepare a detailed order setting out specific findings of fact and conclusions
of law on each proposition for relief presented in the
application. The order shall also specify the pleadings,
documents, exhibits, specific portions of the original
record and transcripts, considered in adjudicating the
application, which shall then become a part of the
record on appeal as defined by Rule 5.2(C)(6).
For almost a year, the District Court of Pottawatomie County failed to comply with both Rule 5.4 and Â§1084. The District Court of Pottawatomie County docket in Case No. No. CF-2002-327 does not reflect that anything other than a minute order was ever filed in this matter until February 14, 2020.
Â¶12 On May 8, 2019, Folsom filed an action in Pittsburg County District Court Case No. CV-2019-65 challenging the conditions of his confinement and asserting the denial of access to the courts. On September 16, 2019, the trial court entered ten separate court minutes sustaining the DOC's various motions to dismiss. On October 21, 2019, Folsom filed an appeal from this ruling in Case No. 118,341. The premature nature of Folsom's appeal has since been cured. Finally, the trial court entered a final journal entry as to each of the defendants with the last journal entry being filed on January 29, 2020.
Â¶13 Once again in Cause No. 118,575, Folsom appealed seeking a certified copy of the January 16, 2019, order denying his post-conviction relief so that he could appeal to the Court of Criminal Appeals. Once again this is a minute order. The docket does not indicate whether the order was mailed to Folsom or his lawyer. Nor is it clear whether the court minute contained a certificate of service. Court minutes should be banished. Trial courts should see to it that final judgments are prepared in a timely manner.
Â¶14 Normally jurisdiction of this cause would belong in the Court of Criminal Appeals. Correction of any errors in the criminal matters involving Folsom through post-conviction relief, obviously rests with the Court of Criminal Appeals. However, there is a consistent pattern of interference with access to justice which we are free to address.
[13] 

B.
FAILURE TO PROVIDE SUFFICIENT PHOTOCOPIES

Â¶15 Folsom filed a pro se pleading on November 4, 2019, asking this Court to order the law librarian at the Oklahoma State Penitentiary to provide him with sufficient copies of documents that he was preparing to file with this Court. He states that he received three copies of his petition for certiorari and three copies of the petition in error. Folsom also alleged that the law librarian advised him that he could not appeal to the Oklahoma Supreme Court. On November 14, 2019, Folsom was directed by this Court to provide more facts and to clarify his complaints.
Â¶16 On November 20, 2019, he requested nineteen copies of his five page conclusion. He was provided three copies. The request for nineteen copies was said to be too voluminous. On that same date, Folsom's request for nineteen copies of the Petition in Error and Part two of the Habeas was also denied by a penitentiary librarian as too voluminous. On that same date, he was provided three copies of his Petition for Certiorari instead of the fifteen requested. The Oklahoma Department of Corrections Request for Legal Research Assistance stated in pertinent part:

15 copies of your 5 page Petition for Certiorari Certified Interlocutory Order is denied due to being to [sic] voluminous. You have been provided 3 copies of your petition.
Again, the reason given was that the request was too voluminous. Folsom alleged that the librarian stated that she ran the law library and did not give a ---- what he filed. Apparently the DOC counsel agreed with her.
Â¶17 On November 25, 2019, Folsom filed a pleading with this Court which stated that a law library staff member refused to provide the requisite number of copies so that he could file documents in pending matters. He also alleges that he was denied copies, pens, and paper. Foust v. Pearman, 1992 OK 135, 850 P.2d 1047, 1050 states:
Prisoners are entitled to access to the courts. Gaines v. Maynard, 808 P.2d 672, 675 (Okla.1991). The method of the access may be by persons trained in the law, law libraries, or a combination of the two. Id. This access includes stamps. 'It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notatorial services to authenticate them, and with stamps to mail them.' Bounds v. Smith, 430 U.S. 817, 824-825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977).
Â¶18 On December 23, 2019, apologizing for having to use toilet paper, the prisoner sought requested forms and court rules. Folsom filed a pleading with the Court on December 2, 2019, alleging that he could neither get copies, nor go to the law library. The DOC filed a response to the petitioner's motion for extraordinary relief on December 12, 2019. The document states that the DOC found Folsom's request for fifteen (15) to nineteen (19) copies of pleadings to be unreasonably voluminous. It also states that Folsom did not provide a clear legal right to have the things done which are asked for or show that the DOC has a clear and indisputable legal duty to accommodate such request.
Â¶19 The rules of this Court have the force and effect of a statute.[14] Here, the DOC employee has substituted her opinion for the rules of the Court.[15] The DOC regulation process provides that legal photocopying services can be denied for being "unreasonably voluminous." [16] 
Â¶20 The DOC is without authority to decide that our rule requirements are too voluminous. And, even if it could, it is ignoring the definition of voluminous. Voluminous has been defined as: 

1). forming, filing or writing a large volume or many volumes
2). sufficient to fill a volume or volumes
3). of great volume, size or extent, of ample size, extent, or fullness
4). having many coils, convolutions, or windings.
[17] 
His request would not result in an unreasonably voluminous endeavor, nor would it fill a large volume. Instead it hinders the prisoner's access to justice, and it is a practice that is most capable of being repeated to deny other prisoners the same rights. It is not within the authority of a DOC librarian to ignore a Supreme Court rule nor to predetermine to which court the prisoner should appeal. Nor is it within the authority of counsel for the DOC to decide that compliance with Supreme Court Rule 1.4 is too voluminous. The prisoner requested copies to comply with the Supreme Court rule.[18] Regardless of how the DOC may perceive the prisoner's cause of action, it is not within its authority to regulate the appellate process. Nevertheless, the counsel for the DOC asserts that it had determined that the requested 15-19 copies of the prisoner's various pleadings were too voluminous. The brief states: 

Instead of denying the entire request, DOC limited the request
to a more reasonable amount of copies. Petitioner provides no authority demonstrating a clear legal right to have the things done
which are asked for or that DOC has a clear and indisputable legal
duty to accommodate such request. Accordingly, Petitioner's
motion for extraordinary relief should be denied.
Â¶21 In other words, the DOC is free to ignore the rules of appellate procedure insofar as the prisoner was concerned because it felt like it. Or, that it knows better than the Court. Or, perhaps, as many children have heard their parents say, "Because we said so!" One can but wonder if the DOC refused to follow the rules and filed only three copies of its response to the prisoner's petition? ( The answer is NO!) Perhaps the rule should be changed, but it is not within the authority of the DOC to do so.
Â¶22 Evidently, the refusal to make the necessary copies is the practice of the DOC. In the most recent filing by the prisoner, the DOC magnanimously increased the number of copies that it will make from 3 to 6. At the same time, it is alleged that the DOC continues to deny paper to the prisoner to prepare his appeals. This is a potential unconstitutional denial of access to the courts for all prisoners who seek redress because of the initial hurdle it places on all those who seek access to justice before the appellate courts of the State of Oklahoma.
Because of these reasons, and the mockery the DOC makes of the rules of this Court, I would order a special report [19] to examine the barriers which the DOC has erected to prevent access to justice by Oklahoma prisoners. I would also order the DOC to appear and to show cause as to why it continues to violate the rules of this court-------- to explain why "what's sauce for the goose is not sauce for the gander." 
IV.
GLEN FOLSUM v. STAFF IN STATE AND PRIVATE PRISON et al.
Case No. 118,753
C. FAILURE TO PROVIDE SUFFICIENT MEDICAL CARE.
Â¶23 Folsum, who is currently incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma, sought relief as a medical emergency because he was bleeding internally from his rectum and he was refused treatment. On May 4, 2020, the Court dismissed his application for relief as frivolous. I would order a special Martinez report. See, Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). The fact that the same issue is on appeal in Cause No 118,341 is small comfort if the issue of rectal bleeding and cancer are true. 
V.
DANIEL PAUL STARR v. OKLAHOMA DEPARTMENT OF CORRECTIONS, et al.
Case No. 118,466
Â¶24 Starr is an Oklahoma DOC inmate currently incarcerated in the Cimarron Correctional Facility. This correctional facility is a medium security prison in Payne County, Oklahoma; it is owned and operated by CoreCivic, formerly Corrections Corporation of America, under contract with the Oklahoma Department of Corrections.
[20] 
Â¶25 Starr received a misconduct citation for an incident on July 11, 2018, when he went to the mail room to mail a package as legal mail. Inside was a hidden compartment as well as a return envelope addressed to another inmate with instructions on how to send back 28 grams worth of a controlled substance. Starr's disciplinary hearing was held on August 8, 2018. 

Â¶26 Starr asserted he was denied due process during the disciplinary process because the DOC refused to provide him with closed circuit video footage to prove he did not send anything to the mail room on July 11, 2018. Starr contended another inmate attempted to send contraband through the postal service as legal mail by addressing it under Starr's name.
Â¶27 State statutes do not authorize or require judicial review of internal prison disciplinary actions in circumstances such as these where an inmate is punished with changes to the situs of his confinement and not loss of earned credits. [21] However, both the federal and the state Due Process Clauses command that prisoners with claims to interests of expectations of a constitutionally -protected nature be afforded access to the courts. See, Prock v. District Court of Pittsburg County, 1981 OK 41, Â¶22, 630 Pl 2d 772. By punishing inmates with something less than revocation of earned credits, the DOC escapes the statutory review process of 57 O.S. 2011Â§564.1.[22] Inmates must be afforded some other process by which they can challenge the DOC's adherence to its own rules, and the regulations that limit its official latitude to change the conditions of confinement and the circumstances under which breach-of-discipline sanctions may be imposed. See, Prock, supra at Â¶15.
Â¶28 The DOC's justification for its alleged inability to provide Starr with the video footage he seeks are questionable. The DOC asserts it has no authority or duty to compel Cimarron Correctional Facility, a private prison, to produce records. It provides no authority in support of that argument. However, the DOC website is contra to this argument. The Oklahoma Department of Corrections website states:

The Oklahoma Department of Corrections contracts with private
prison and county jail contractors as a means to provide
bed space and constitutionally required services for inmates.
State statutes deem the Director of the Department of Corrections responsible for the monitoring of private prisons in Oklahoma.[23] [Emphasis supplied].
Â¶29 If the touchstone of due process is protection of the individual from arbitrary action of government, the DOC should not be able to escape judicial review of the arbitrariness of the disciplinary process by imposing a lesser punishment than revocation of earned credits, thus evading review. A special report should have been ordered to determine whether this is a persistent attempt to circumvent due process.
V.
FLOYD MARKHAM, Jr. v. HONORABLE IRMA J. NEWBURN
Case No. 118,186
Â¶30 Floyd Markham (Markham/petitioner) is an inmate in the custody of the DOC. He was housed at the Lawton Correctional Facility, a private prison. On October 22, 2018, he filed a writ of mandamus in Comanche County against the DOC and several of its employees. The matter concerned the calculation of the time he has remaining to serve on several criminal convictions. The cause was assigned to Judge Irma Newburn. A cover letter to the court clerk indicates that all officials were served. Counsel for the Lawton Correctional Facility filed a response stating that they were not served. The respondents never filed responses to the action pending in the District Court. On February 15, 2019, petitioner filed a motion asking that respondents reply. On May 23, 2019, he filed a motion to expedite proceedings. The trial court did nothing in response to either filing.
Â¶31 This Court has general superintending control of the courts of the State of Oklahoma. Okla. Const. art. 7, Â§4. This cause involves an administrative civil matter involving the correction of DOC records. Failure of a district judge to take any action in a matter for nearly two years is unsupportable. I would issue a writ of mandamus directing the trial court to issue an order: 1) Requiring the defendants in the underlying action to respond to petitioner's application for writ of mandamus; 2) Directing defendants to show cause why the application should not be allowed; or 3) Granting the writ without further notice.
VI.
BRIAN ADAMS v. THE DISTRICT COURT FOR THE 13TH JUDICIAL DISTRICT, OTTAWA COUNTY, STATE OF OKLAHOMA
Case No. 118,618
Â¶32 Adams, (Petitioner/Adams) seeks a writ of mandamus from this Court directing the trial court in State of Oklahoma v. Brian Frank Adams, No. CM-2015-213 (Ottawa County) to dismiss the underlying misdemeanor criminal proceeding for failure to prosecute. Petitioner is currently in the custody of the Department of Corrections, serving a sentence imposed in State of Oklahoma v. Brian Frank Adams, No. CF-2014-56A (Delaware County) for three felony counts of unauthorized use of an implement of husbandry, selling a stolen implement of husbandry, and altering/defacing a vehicle identification number. In 2015, prior to his current incarceration, petitioner was charged with misdemeanor counts of driving under suspension and without a seatbelt in State of Oklahoma v. Brian Frank Adams, No. CM-2015-213 (Ottawa County). A bench warrant was issued in that case on April 5, 2016, for his failure to appear.
Â¶33 While in custody, he was informed by the DOC of the pending charges and warrant in No. CM-2015-213. On July 11, 2019, Adams filed a motion to dismiss the Ottawa county misdemeanor case. On July 18, 2019, the Ottawa County district court held a hearing on his motion and determined: 1) Petitioner was incarcerated by the DOC in Taft, Oklahoma; 2) there was a pending untried case against Adams with an outstanding arrest warrant; and 3) Adams was available to the State of Oklahoma. The trial court entered an order that Adams be transported to the Ottawa County Detention Center on the outstanding warrant.
Â¶34 This never happened. On November 5, 2019, petitioner filed a motion to dismiss the Ottawa county case for failure to prosecute, pursuant to 22 O.S. 2011 Â§13.[24] He asserted the State's failure to diligently prosecute the misdemeanor Ottawa County case for over three months, despite the trial court's order for transport, deprived him of his constitutional right to a speedy trial guaranteed by the Okla. Const., art. 2, Â§20. His motion further asserted the outstanding warrant was therefore illegal and void. In support, Adams cited several decisions of the Oklahoma Court of Criminal Appeals: Cooper v. State, 1983 OK CR 154, 671 P.2d 1168; McDuffie v. State, 1982 OK CR 150, 651 P.2d 1055; and Thacker v. Marshall, 1958 OK CR 97, 331 P.2d 488.
Â¶35 Petitioner initiated this original proceeding on February 6, 2020, by filing his Petition for Alternative Writ of Mandamus pursuant to 12 O.S. 2011 Â§ 1451. Adams asserted that the trial court had not ruled on his motion to dismiss the Ottawa County case. He asked this Court to issue a writ of mandamus ordering the District Court of Ottawa County to dismiss No. CM-2015-213 with prejudice for failure to prosecute based upon his statutory and constitutional rights to a speedy criminal trial.
Â¶36 Petitioner is correct. On the docket entry for No. CM-2015-213, the date he filed his writ application did not indicate dismissal or that the trial court has directly ruled on his motion Adams is currently incarcerated. There is a good reason for his desire to have his misdemeanor traffic charges resolved. The Department of Corrections Sentence Administration Guidelines, Department of Corrections, OP-060211, IV (A )(2) (e) enacted July 18, 2017, states:

....(e). Inmates with outstanding warrants/detainers or pending charges involving law violations committed while
in agency custody... [are not eligible for restoration of earned credits.]
It is obviously a reasonable action by Adams to attempt get the matter resolved.
Apparently, the February 6, 2020, petition for mandamus in this Court activated the judicial process. On February 18, 2020, the District Court of Ottawa County dismissed the case for failure to prosecute, and ordered costs assessed against the State of Oklahoma. I, therefore, concur that this proceeding should be dismissed as moot. 
CONCLUSION
Â¶37 Each of these incidents considered alone might not be egregious, However, we have confronted several incidents within the last few months. How many more similar events have occurred? Although one of these failures by the DOC might be ignored, each of them is capable of happening again. In an era of "criminal justice reform" it is appropriate to address these denials of access and to remember that prisoners have rights too.
FOOTNOTES
[1] Title 12 O.S. 2011 Â§696.2 provides:
The filing with the court clerk of a written judgment, decree or appealable order, prepared in conformance with Section 696.3 of this title and signed by the court, shall be a jurisdictional prerequisite to the commencement of an appeal. The following shall not constitute a judgment, decree or appealable order: A minute entry; verdict; informal statement of the proceedings and relief awarded, including, but not limited to, a letter to a party or parties indicating the ruling or instructions for preparing the judgment, decree or appealable order.
Mansell v. City of Lawton, 1994 OK 75, Â¶3, 877 P.2d 1120 [An order of the District Court titled "Court Minute" is not a judgment, decree or appealable order for the purpose of commencing the time to appeal.]; Aven v. Reeh, 1994 OK 67, Â¶4, 878 P.2d 1069.
[2] Transcript of the proceedings of December 16, 2010, in the District Court of Washington County, concerning case numbers, CF-02-497 and CF -08-279.
Title 21 O.S. Supp. 2002 Â§13.1, the statute in effect at the time of Elias' first crime, required anyone convicted of certain crimes against a child to serve not less than eighty-five percent (85%) of any sentence imposed by the judicial system prior to being eligible for parole. The version of the statute at the time of the offense became effective on March 8, 2002. The felony was committed September 5, 2002.
Letter to Elias from his counsel at the December 16, 2010 hearing, dated January 16, 2012.
[3] The court minute of the Application to Revoke/Accelerate filed in the District Court of Washington County on December 16, 2010.
[4] The Order Denying Application for Post-Conviction Relief filed in CF-2002-497 in the District Court of Washington County on November 25, 2014.
[5] On-line inmate records of the Oklahoma Department of Corrections accessed October 2, 2019.
[6] Court Minute Order filed October 12, 2012, CF-02-497, in the District Court of Washington County.
[7] A sentencing mistake should be reversed when the defendant shows a clear or obvious error that affects his substantial right and the court has discretion to correct that error. Puckett v. United States, 556 U.S. 129, 129 S.Ct. 1423, 1429, 173 L.Ed 2d 266 (2009); U.S. v. Mudekunye, 646 F.3d 281, 287 (5th Cir. 2011). See, The People of the State of New York v. Wright, 56 N.Y.2d 613, 435 N.E.2d 1088, 450 N.Y.S.2d 473 (Ct. App. New York 1982). A defendant is entitled to be sentenced in accord with the law, and is entitled to be sentenced by a judge who is acting in conformity with such law. People v. Francisco, 711 N.W.2d 44, 49 (Mich. 2006). A trial judge is presumed to know the law and apply it properly, and this presumption may be overcome by an affirmative showing contrary to the record. People v. Solis, 367 Il. ApP.3d 10-94.
[8] The powers of the government of the State of Oklahoma divided between the Legislative, Executive and Judicial branches are separate and distinct, and neither shall exercise the powers properly belonging to either of the others. Okla. Const. art. 4, Â§1.
[9] State v. A.C. Ford, 539 N.W.2d 214, 230 (Minn. 1995).
[10] See State v. Hunter, 1990 OK CR 13, 787 P.2d 864, State v. A.C. Ford, see note 9, supra; Poitier v. State, 844 So. 2d 707 (Fla. Dist. Ct. App. 2003); Oakman v. Dep't of Corr., 903 A.2d 106 (Pa. Commw. Ct 2006).
[11] Warnick v. Booher, 2006 OK CR 41, Â¶10, 144 P.3d 897. Okla. Const., art.4, Â§1. See also, State v. A.C. Ford, see note 9, supra. The Department of Corrections is an executive branch administrative agency. See, The Oklahoma Corrections Act of 1967, 57 O.S. 2011 Â§Â§501 et. seq.
[12] Apparently, this has been an ongoing concern. In Fields v. Driesel, 1997 OK CR 33, 941 P.2d 1000, the Court of Criminal Appeals also discussed the authority of the Department of Corrections to change the terms of the judicial ordered confinement. Although the Court lists it as a majority opinion, the third vote was a concurring specially, which stated that the judge agreed with the dissenters, in many respects. In an unpublished opinion, Tate Lyle Red Leaf v. Oklahoma Department of Corrections, Case No. 116,787, (Court of Appeals opinion withdrawn and petition for certiorari denied on October 21, 2019), the Court of Appeals also recognized the lack of notice and the consequences of pleading nolo contendere as a denial of procedural due process. Because of its holding, the issue of separation of powers was not addressed.
[13] Dutton v. City of Midwest City, 2015 OK 51, Â¶31, 353 P.3d 532._
[14] Administrative rules and court rules are valid expressions of lawmaking powers having the force and effect of law. Bertrand v. Laura Dester Ctr., 2013 OK 18, 300 P.3d 1188.
[15] Okla. Sup. Ct. R. 1.4 provides:
(f) Copies. The original shall be filed with the following number of copies, unless the Rules for Electronic Filing in the Oklahoma Courts provide otherwise when a document is electronically filed. 
1. Petition in Error--Fourteen copies (Rule 1.23).
[16] The provisions of the Department of Corrections, OP-030115 Page:1Effective Date:10/29/2019 Access to Courts/Law Library ACA Standards provide:
Photocopying Services for Documents Legal photocopying services will be available during regular law library hours. 
1.Requests for photocopies will be initiated by the inmate by submitting "Inmate's Request for Disbursement of Legal Costs" form (DOC 030115A) to the law library supervisor. 
2.Inmates will be charged 25Â¢ cents per copy(i.e., one page front and back would total 50Â¢ cents).
3.Inmates who do not have enough funds to cover the cost of photocopying
and who have a court-imposed or rule-imposed deadline will be provided the requested service. The cost of photocopying will be collected as soon as funds become available in his or her trust fund .Inmates with funds to cover the costs of photocopying and who desire a working copy of their pleading will be provided the requested service.
4.When legal photocopying services are denied, reasons for such denial will be documented on "Inmate's Request for Disbursement of Legal Costs" form. The law library supervisor may deny legal photocopying services if the material is: 
a. Not of a legal nature or not to a legal correspondent as defined in OP-030117entitled "Correspondence, Publications, and Audio/Video Media Guidelines"(Example: A copy of a program completion certificate for personal use);
b. Unreasonably voluminous;
c. Of poor copy quality;
d. Not for purposes of judicial legal redress relating to post conviction relief or conditions of confinement;
e .Solely a working copy when the inmate lacks the necessary funds:
f. In excess of the judicial requirements for the number of required sets for distribution (Examples: Requesting ten copies of a pleading when there are only three defendants; the attaching of exhibits to a pleading that does not allow the attachment of exhibits); org. Duplicate material is already available to the judiciary and opposing counsel (Example: Copies to both the defendant and to his or her attorney).
Section-03 Facility Operations OP-030115Page: 9 Effective Date: 10/29/20195.The law library supervisor will ensure the photocopies are available within 48 hours (excluding weekends and holidays) after the documents were submitted for photocopying. Staff will only view material for photocopying to the extent necessary to determine whether appropriate for legal photocopying and to ensure legible copying by the machine.6.Photocopying services will be provided by the law library supervisor. 7.At no time is an inmate to have access to a copier/printer/scanner without permission from the law library supervisor. [Emphasis supplied.]
[17] Dictionary.com, accessed February 6, 2020.
[18] Oklahoma Supreme Court Rule 1.23 provides in pertinent part:
Commencement. An appeal from a district court is commenced by:
(1) filing a petition in error with fourteen (14) copies with the Clerk of this Court within the time prescribed in Rule 1.21.....
[19] Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978).
[20] The Department of Corrections website, http://doc.ok.gov/private-institutions, accessed February 10, 2020.
[21] Prock v. Dist. Court of Pittsburg City., 1981 OK 41, Â¶9, 630 P.2d 772 states:
Our statutes provide no explicit access to the district court to a prisoner who seeks review of a warden's administrative action taken in the course of maintaining internal prison discipline. Prock stands before us without the benefit of a state-created claim to question, in a judicial forum, any constitutionally impermissible agency behavior of prison authorities acting in the administration of correctional discipline. 
This lacuna in our state law is itself offensive to constitutional notions of legality. A prisoner's access to the courts to litigate constitutionally-cognizable claims to a denied liberty interest is clearly mandated by federal case law. If the parties to the proceedings are subject to state-court jurisdiction, a state court is authorized nay required to review violations of federal constitutional rights which occur within its borders. In short, prisoners must be provided with "some clearly defined method *776 by which they may raise claims of denial of federal rights". 
While statutory state law does not authorize review of actions by prison officials
in dealing with internal breach of discipline, claims for vindication of constitutionally-protected interests, which may arise from prisoner misconduct disputes, must receive judicial scrutiny by the command of the Federal Government's fundamental law. [Citations ommitted].
[22] Title 57 O.S. 2011 Â§564.1 provides in pertinent part: 
A. In those instances of prison disciplinary proceedings that result in the revocation of earned credits, the prisoner, after exhausting administrative remedies, may seek judicial review in the district court of the official residence of the Department of Corrections. To be considered by the court, the inmate shall meet the following requirements:...
C. The petition shall assert that due process was not provided and prove which element of due process, relevant only to a prison administrative disciplinary proceeding, was not provided by the prison staff....
[23] The Department of Corrections website, http://doc.ok.gov/private-institutions, accessed February 10, 2020. Title 57 O.S. Supp. 2012 Â§561 states in pertinent part:
1. A. The Department of Corrections is hereby authorized to provide for incarceration, supervision, and residential treatment at facilities other than those operated by the Department of Corrections. Services offered for persons under the custody or supervision of the Department are to include, but not be limited to, housing, alcoholism or drug treatment, mental health services, nursing home care, or halfway house placement. Such services must meet standards prescribed and established by the State Board of Corrections for implementing such a program, including but not limited to standards concerning internal and perimeter security, discipline of inmates, educational and vocational training programs, employment of inmates, and proper food, clothing, housing, and medical care. Such services must be contracted for in accordance with Section 85.7 of Title 74 of the Oklahoma Statutes. Such services, if provided by private prison contractors, shall be contracted for as required by this section....
[24] Title 22 O.S. 2011 Â§13 provides:
In a criminal action the defendant is entitled:
1. To a speedy and public trial.
2. To be allowed counsel, as in civil actions, or to appear and defend in person and with counsel; and,
3. To produce witnesses on his behalf, and to be confronted with the witnesses against him in the presence of the court.

Winchester, J., with whom Darby, V.C.J. and Kane, J. join, dissenting:
Â¶1 The majority opinion recognizes a private right of action for violations of Okla. Const. art. II, Â§ 9 based solely on the holdings in Washington and Bosh.[1] However, these cases did not create a wide-ranging tort claim, and "[n]ot every malfeasance, misfeasance, or nonfeasance rises to the level of a violation of constitutional rights." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Washington Court never held a cause of action existed under Okla. Const. art. II, Â§ 9, and the Bosh Court only addressed a constitutional violation of Okla. Const. art. II, Â§ 30, which is not alleged here.[2] Additionally, both Washington and Bosh involved an intentional, egregious use of excessive force against an inmate or detainee arising from conduct demonstrating a "wantonness in the infliction of pain." Washington, 2002 OK 45, Â¶ 14, 305 P.3d at 1040. This Court has never extended Washington or Bosh to a factual scenario like the one present here and should not do so today.
Â¶2 The county's continued detention of Payne based on the facts of this case--the delay of the district court in filing the Judgment and Sentence, the county's understanding and application of Oklahoma statutes and DOC rules, and DOC's delayed release of Payne--was at most a negligent unlawful extension of Payne's incarceration. It is not the type of conduct that rises to the level of cruel and unusual punishment prohibited by the Oklahoma Constitution and U.S. Constitution, even under the standard of "deliberate indifference" proposed by the majority today.
Â¶3 In Barrios v. Haskell County Public Facilities Authority, 2018 OK 90, Â¶Â¶ 16-17, 432 P.3d 233, 240, this Court indicated a strong reluctance to extend Bosh or expand tort remedies for constitutional violations. The Court noted that expanding tort remedies for constitutional violations is a "disfavored judicial activity." Id. Â¶ 16, 432 P.3d at 240 (citing Ziglar v. Abbasi, 137 S.Ct. 1843, 1857 (2017)). The majority opinion in this case is inconsistent with this pronouncement in Barrios and extends Bosh to conduct that is at most negligent.
Â¶4 Under existing Oklahoma precedent, I do not believe the conduct of Defendants Joel Kerns and Missy Eldridge supports a private cause of action for violation of Okla. Const. art. II, Â§ 9. I, therefore, respectfully dissent.
FOOTNOTES
[1] See Washington v. Barry, 2002 OK 45, 55 P.3d 1036; Bosh v. Cherokee Bldg. Auth., 2013 OK 9, 305 P.3d 994.
[2] See Barrios v. Haskell Cnty. Pub. Facilities Auth., 2018 OK 90, Â¶Â¶ 9, 13, 432 P.3d 233, 238, 239.

Rowe, J., with whom Darby, V.C.J., Winchester and Kane, JJ., join, dissenting:
Â¶1 I dissent from the Court's decision to recognize a private cause of action for civil damages under Okla. Const. art. 2, Â§9.
Â¶2 The questions raised by the case at bar do not pertain to cruel and unusual punishment but rather whether the two county officials' tortious conduct creates a private right of action under the Oklahoma Constitution.
Â¶3 Here, the Plaintiff, James C. Payne, alleges that he was held in detention at the Pittsburg County jail for approximately three months beyond the end of his sentence. Over the course of nearly a decade since his release, the Plaintiff has sought to recover civil damages from the Defendants, the State of Oklahoma, and various other county institutions and officials for violations of his rights under the United States Constitution, federal statute, and the Oklahoma Constitution. The Plaintiff now asks this Court to reverse an order granting summary judgment in favor of the Defendants on his claim for damages under Okla. Const. art. 2, Â§9 (cruel and unusual punishment).
Â¶4 Prior to 1978, this Court recognized the common law doctrine of sovereign immunity. See, e.g., Henry v. Oklahoma Turnpike Authority, 1970 OK 232, 478 P.2d 898; State ex rel. Dept. of Highways v. Keen, 1960 OK 170, 354 P.2d 399; State ex rel. Com'rs of Land Office v. Duggins, 1953 OK 402, 258 P.2d 891; Patterson v. City of Checotah, 1940 OK 294, 103 P.2d 97; Wentz v. Potter, 1933 OK 655, 28 P.2d 562. Under the common law approach to sovereign immunity, a sovereign government could not be sued without its consent. Vanderpool v. State, 1983 OK 82, Â¶7, 672 P.2d 1153, 1154.
Â¶5 In 1983, this Court acknowledged in Vanderpool v. State the legislature's right to codify sovereign immunity by statute.[1] It is only by virtue of explicit legislation, like that in The Governmental Tort Claims Act ("GTCA"), 51 O.S. Â§Â§ 151 et seq., that a state provides its consent to be subject to civil liability.[2] Vanderpool, 1983 OK 82, Â¶11, 672 P.2d at 1155.
Â¶6 The Plaintiff seeks to prevail on a claim that has not previously been recognized by this Court, i.e. whether there exists a private right of action under Okla. Const. art. 2, Â§ 9. We previously recognized a plaintiff's potential cause of action for the excessive use of force under Okla. Const. art. 2, Â§9 in Washington v. Berry, 2002 OK 45, 55 P.3d 1036, but we stopped short of officially recognizing it because the case could be resolved on other grounds.[3] In Washington, the plaintiff suffered injuries when a team of correctional officers entered his cell and attempted to forcibly remove restraints that he refused to give up voluntarily. 2002 OK 45, Â¶2, 55 P.3d at 1038. The plaintiff sought to impose liability on the correctional officers for the use of excessive force. Id. at Â¶9, 55 P.3d at 1039. We affirmed the trial court's dismissal of the claim because although the plaintiff had a "potential" cause of action, the actions of the corrections officers would not have supported such a claim. Id. at Â¶18, 55 P.3d at 1041-42.
Â¶7 In Bosh v. Cherokee County Bldg. Authority, we held that Okla. Const. art. 2, Â§30 provides a cause of action for the use of excessive force on arrestees and pre-incarcerated detainees, notwithstanding the limitations of sovereign immunity set out in the GTCA. 2013 OK 9, Â¶23, 305 P.3d at 1001. In that case, the plaintiff suffered serious injuries after jailers at the county detention center assaulted him during the booking process. Id. at Â¶Â¶3-4, 305 P.3d at 996. Bosh recognized that the GTCA expressly immunizes the state, its political subdivisions, and employees from tort liability for claims arising from the operation of any prison, jail, or correctional facility. Id. at Â¶8, 305 P.3d at 997; 51 O.S. 2012 Â§155(24); see Vanderpool supra.
Â¶8 Nevertheless, in Bosh we carved out an exception to the GTCA by imposing liability vis-Ã -vis the doctrine of respondeat superior, to hold that the State should be liable for the tortious conduct of its employees when they are acting within the scope of employment. 2013 OK 9, Â¶Â¶9-13, 305 P.3d at 998-99. Despite acknowledging the claimed immunity regarding the operation of prisons and jails, we disregarded it because the alternative might run contrary to the potential cause of action discussed in Washington and create blanket immunity for state employees to violate citizens' constitutional rights. Id. at Â¶Â¶17-23, 305 P.3d at 1000-01.
Â¶9 In Barrios v. Haskell County Public Facilities Authority, we held that the plaintiff's causes of action under Okla. Const. art. 2, Â§Â§ 7 and 9 were barred by the GTCA after amendments to the act extended the State's immunity to constitutional tort claims.[4] However, we went even further in Barrios, finding that there was no foundation in Oklahoma common law for recognizing a money damage tort claim under Okla. Const. art. 2 Â§ 7 or 9.[5] "Certainly nothing in the text of Article II, Sections 7 and 9 creates a tort cause of action for money damages as a remedy to vindicate violations of those rights ...."[6] 
Â¶10 Although the instant cause of action accrued prior to Barrios, and prior to the 2014 GTCA amendments barring constitutional tort claims, 51 O.S. 2015 Â§Â§ 152(14), 153(B), our reasoning in Barrios is still applicable here. In review of Oklahoma case law, Bosh stands alone as a jurisprudential anomaly that provides us no foundation worthy of recognition by today's decision. I do not see Bosh, in light of Oklahoma's extant jurisprudence, as precedent for recognizing Plaintiff's cause of action. 

Â¶11 As noted in Barrios, the justification for recognizing constitutional tort claims, particularly at the federal level, has eroded in recent years.
The best support for the notion that violations of Article II, Section 9 rights should be vindicated through tort suits comes from the United States Supreme Court's decision in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), where that Court held that Eighth Amendment rights could be vindicated through tort suits. In the very recent decision of Ziglar v. Abbasi, [] 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017), however, the United States Supreme Court declined to recognize a tort claim brought by detainees who alleged they were abused in violation of their Due Process Rights. In so doing, the Ziglar Court called the continuing validity of Carlson into grave doubt, saying that it might decide the case differently today because "the arguments for recognizing implied causes of action for damages" had "los[t] their force."
2018 OK 90, Â¶14, 432 P.3d 233, 239. The Ziglar Court expressed concerns regarding the separation of powers and imposition on legislative authority. Ziglar, 137 S.Ct. at 1856.
Â¶12 The unavailability of money damages as a remedy for violations of one's rights under the Oklahoma Constitution, however, does not render these constitutional provisions hollow, nor does it deprive a plaintiff of the opportunity to seek financial redress for harm already suffered.[7] For example, one may still seek injunctive relief to prevent anticipated constitutional violations.[8] Additionally, under 42 U.S.C. Â§ 1983, citizens may seek money damages for deprivations of their federal constitutional rights by the State, as the Plaintiff did here.[9] Because the provisions of Okla. Const. art. 2, Â§9 mirror those of the Eighth Amendment to the United States Constitution, a violation of one's rights under the Oklahoma Constitution necessarily gives rise to a Â§ 1983 claim.[10] 
Â¶13 Accordingly, I would affirm the Court of Civil Appeals' holding that no private cause of action exists under Okla. Const. art. 2, Â§9. Therefore, I respectfully dissent. 

FOOTNOTES
[1] Bosh v. Cherokee County Bldg. Authority, 2013 OK 9, Â¶14, 305 P.3d 994, 1000. The Supreme Court of the United States has also recognized the right of the states to claim and the define the limits of their sovereign immunity. Alden v. Maine, 527 U.S. 706 (1999).
[2] The Plaintiff originally brought his state claim pursuant to the GTCA, but later abandoned his state tort claim in favor of his Oklahoma constitutional tort claim.
[3] See Barrios v. Haskell County Pub. Facilities Auth., 2018 OK 90, Â¶13, 432 P.3d 233, 239.
[4] Id. at Â¶12, 432 P.3d at 238-39; 51 O.S. 2015 Â§Â§ 152(14), 153(B).
[5] Barrios, 2018 OK 90, Â¶13, 432 P.3d at 239.
[6] Id.
[7] See id. at Â¶3, 432 P.3d at 241-42 (Edmondson, J., concurring).
[8] Id. at Â¶13, 432 P.3d at 239 n.21.
[9] Id.
[10] Id.; see Phillips v. Wiseman, 1993 OK 100, Â¶9, 857 P.2d 50, 53; Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla., 986 F.Supp.2d 1249, 1258 (W.D. Okla. 2013).
Â