**STATE ex rel. COMMISSIONERS OF LAND OFFICE v. DUGGINS et al.**

No. 35088.

Supreme Court of Oklahoma.
Feb. 17, 1953.

Rehearing Denied April 28, 1953.

Application for Leave to File Second Petition for Rehearing Denied July 7, 1953.

R. H. Dunn and Ernest B. Lykins, Oklahoma City, for plaintiff in error.

Walter L. Gray, Twyford, Smith & Crowe, Oklahoma City, for defendants in error.

HALLEY, Chief Justice.

This suit was commenced as an action to quiet title by Oliver J. Duggins and wife and Manciel Williams, who will be referred to as "Plaintiffs" against the Commissioners of the Land Office, who will be

referred to as "Commissioners." The land involved is in Beckham County and was acquired by the Commissioners by foreclosure proceedings. Plaintiffs alleged that their equitable title had first been acquired by Manciel Williams in 1941 when the Commissioners issued to him a Certificate of Purchase.

Plaintiffs alleged that all of the terms of the Certificate of Purchase had been promptly complied with and that it provides that the Commissioners reserved one-half of the minerals underlying the land. That Duggins and wife now hold the Certificate of Purchase by mesne transfers from Manciel Williams who first acquired it from the Commissioners. It was further alleged that the Commissioners had, on December 2, 1947, without the knowledge or consent of Plaintiffs, issued and caused to be recorded in Beckham County a "Correction Certificate of Purchase" which provided in part as follows:

"The Commissioners of the Land Office do hereby and by these presents reserve and retain title to all the oil, gas, and other mineral rights in and under the above described land, which mineral rights will also be reserved in said patent."

Plaintiffs further alleged that it was agreed when the original Certificate of Purchase was issued to Manciel Williams that he was to receive one-half of the minerals and that he never agreed that all of the minerals should be reserved by the Commissioners; that the issuance and recording of the corrected Certificate of Purchase clouded the title of plaintiffs and prayed that the corrected Certificate of Purchase be cancelled and that their title be quieted, subject to the balance due upon the purchase price.

The Commissioners filed a motion to dismiss upon the ground that the court had no jurisdiction of an action against the sovereign state without the consent of the Legislature. The motion was overruled, as was a general demurrer filed by the Commissioners.

The Commissioners answered by general denial and alleged that they were the owners of the fee simple title to the land subject only to the Certificate of Purchase held by Plaintiffs and that they held the legal and equitable title to all minerals under the land and that defendants have no interest therein.

They allege that they acquired the land by foreclosure proceedings and had, in May, 1941, ordered an appraisal of their lands in Beckham County, which appraisement was duly approved, and after which they had ordered the land to be advertised for sale; that the land here involved was listed in the notice of sale as "Tract No. 13"; that the notice of sale was duly published and contained the following:

"At such sale there shall be reserved or retained by the state forever, title to fifty per centum of all oil, gas, and other mineral rights in and under all lands that may be sold. The purchaser will receive an undivided fifty per centum of all oil, gas, and other mineral rights in and under all tracts hereby offered, except as follows: The purchasers of Tracts 6, 13, 14, 34, and 39 will receive no mineral interest whatsoever."

The Commissioners alleged that the sale was had as advertised and continued from day to day until all tracts were sold, including Tract No. 13, to Manciel Williams, which was sold subject to the notice of sale, as above set out, and approved by the Commissioners, December 8, 1941, when Certificate of Purchase was ordered issued to Manciel Williams; that the Clerk preparing such Certificate of Purchase used a printed form and inadvertently failed to make it conform to the terms of sale, as shown in the notice of sale.

That upon discovery of the clerical error mentioned the Commissioners issued on November 25, 1947, a Correction Certificate of Purchase and filed the same for record in Beckham County. It contains the following reservation:

" * * * The Commissioners of the Land Office do hereby and by these presents reserve and retain title to all the oil, gas and other mineral rights in and under the above described land, which mineral rights will also be reserved in said patent."

The Commissioners alleged that on December 7, 1949, Manciel Williams and wife transferred their interests to T. J. McGrath and Paul Kenner who assigned to Oliver J. Duggins and wife, on April 3, 1950, and that such assignments were written on the corrected Certificate of Purchase reserving to the State all of the minerals.

It was alleged by the Commissioners that the statutes of Oklahoma do not authorize them to convey any property not advertised as provided by statute, and that Plaintiffs acquired whatever interest they have with full knowledge that the Commissioners had retained all of the minerals.

The Plaintiffs filed a reply in which they set up the provisions of Sub-section (c), Section 96, 64 O.S.1951, which is as follows:

"(c) Upon the full payment of the purchase price of any tract of land sold under the provisions of this Act, the Commissioners of the Land Office shall immediately execute and deliver to the purchaser thereof a patent thereto in fee simple; provided, however, the Commissioners of the Land Office shall, in all cases, reserve and retain forever title to fifty per centum (50%) of all the oil, gas and other mineral rights in and under all lands so sold. Laws 1939, p. 137, § 4; Laws 1943, p. 156, § 2; Laws 1951, p. 181, § 1."

Plaintiffs filed a motion for judgment on the pleadings. The court sustained the motion and rendered judgment for the Plaintiffs quieting their title to the surface rights and one-half of the minerals, subject to the balance due on the purchase price.

The court took the view that under the provisions of Sec. 96(c), 64 O.S.1951, it was the mandatory duty of the Commissioners to retain only 50 per centum of the minerals when selling land acquired by foreclosure.

The Commissioners have appealed and contend that the court erred in overruling their motion to dismiss and their demurrer and in sustaining Plaintiffs' motion for judgment on the pleadings and in rendering judgment for the Plaintiffs.

The contention that the motion to dismiss should have been sustained is based upon the theory that this action is not in fact an action to quiet title, but an action against the sovereign state to recover and quiet title to one-half of the minerals. It is well established that the state, when acting in its sovereign capacity, may not be sued unless permission is granted by the Legislature. Has such permission been granted?

The Commissioners of the Land Office were created by Article VI, Section 32 of our Constitution in the following language:

"The Governor, Secretary of State, State Auditor, Superintendent of Public Instruction, and the President of the Board of Agriculture, shall constitute the Commissioners of the Land Office, who shall have charge of the sale, rental, disposal, and managing of the school lands and * * * public lands of the State, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature."

The Legislature has expressly provided that the Commissioners of the Land Office may bring and defend suits growing out of their handling of school land and funds. Section 160, 64 O.S.1951, is as follows:

"The Commissioners of the Land Office are hereby authorized and empowered to bring or defend suits in the name and on behalf of the State of Oklahoma in all matters affecting the public lands of the State, and in all matters affecting the loaning, investing or collecting of school land and State land moneys, of and belonging to the State; and it shall be the duty of the Attorney General of the State to represent the Commissioners of the Land Office, and the State in the prosecution or defense of any suit or action so instituted, brought or defended; provided, this Act shall not abolish the office of Law and Executive Clerk of the Commissioners of the Land Office, which was created by Chapter 211, of the Session Laws of

1919. Laws 1910–11, ch. 44, p. 88, § 4; Laws 1923, ch. 27, p. 38, § 1."

We think that the Legislature has expressly given to the Commissioners of the Land Office authority to "bring or defend" all suits growing out of its sales, rentals, disposal and management of school lands and school funds, and that the motion to dismiss this action was properly overruled, as was the general demurrer based upon the same theory.

The offer of the Commissioners to sell the land in the case before us is expressed in the notice of sale which clearly stated that the purchaser of Tract 13 would receive no interest in the minerals whatsoever. The Certificate of Purchase was not authorized except upon the terms set out in the notice of sale. Through error a Certificate of Purchase was executed reserving only a one-half interest in the minerals. The Certificate of Purchase executed by error was ineffective unless it complied with the conditions of the offer of sale.

Manciel Williams could acquire no greater interest than was offered by the Commissioners—that is, the surface rights only. There is no dispute as to the terms of the offer of sale. The purchaser knew or should have known the terms of sale as published in the notice of sale.

Plaintiffs claim that since the Commissioners could only sell under rules and regulations prescribed by the Legislature and the Legislature having directed by Section 96(c), 64 O.S.1951, that the Commissioners " * * * shall, in all cases, reserve and retain forever title to fifty per centum (50%) of all the oil, gas and other mineral rights in and under all lands so sold", as provided by the 1951 Legislature, the Commissioners had no authority to reserve or retain more than fifty per centum (50%) of the minerals.

The Commissioners contend that since they have the undisputed power to sell land acquired by foreclosure proceedings, they have the authority to sell all or any interest in land so long as they reserve one-half of the minerals. The 1939 Legislature had authorized them to sell and reserve "not less than" 40% of the minerals and that the omission of the quoted words and directing that 50% be reserved, did not change the intent of the Legislature to leave the reservation of minerals to the discretion of the Commissioners so long as they reserved at least 50%.

We think that the broad and unlimited power to sell granted to the Commissioners gives them authority to offer and sell all or any interest in the lands they acquired by foreclosure, so long as they reserve and retain as much as 50% of the minerals; that the Legislature has given the Commissioners full and unlimited power to defend actions arising out of their transactions respecting the lands and funds entrusted to their care; and that in the case before us the purchaser of the Certificate of Purchase could and did acquire only the surface rights and no interest in the minerals, because only the surface rights were offered for sale. The sale has been approved by the Commissioners by the acceptance of annual payments provided for in the Certificate of Purchase. We have not had occasion to pass on this question previously, but we think that Thornhill v. Ford, 213 Miss. 49, 56 So.2d 23, decided by the Supreme Court of Mississippi in 1952 sustains us in this case.

The judgment is reversed with directions to enter judgment for the Commissioners and quieting their title to all the minerals as reserved by the corrected Certificate of Purchase, and quieting title in Plaintiffs, Duggins and wife, to the surface rights, subject to balance of purchase price due under corrected Certificate of Purchase.

JOHNSON, V. C. J., and WELCH, DAVISON, BLACKBIRD, JJ., concur.

WILLIAMS, J., concurs in result.

CORN, ARNOLD, and O'NEAL, JJ., dissent.