STATE of Oklahoma ex rel. Walter A. TAYRIEN, Petitioner,

v.

Walter M. DOGGETT, County Judge of Kay County, Oklahoma, Respondent.

No. A–12336.

Criminal Court of Appeals of Oklahoma.

April 11, 1956.

Raymond A. Trapp, Blackwell, for petitioner.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., for respondent.

JONES, Presiding Judge.

This is an original action wherein the petitioner, Walter A. Tayrien, seeks a writ of prohibition directed to Walter M. Doggett, County Judge of Kay County, prohibiting the respondent from proceeding further with the trial of a criminal action filed in the County Court of Kay County wherein the petitioner was charged with the alleged offense of driving an automobile on a public highway while under the influence of intoxicating liquor.

The verified petition alleged that the information filed against the accused purportedly charged a violation of the provisions of House Bill No. 814, being Section 1 of Chapter 4, p. 263 of the 1955

Session Laws of the Oklahoma Legislature, 47 O.S.Supp. 93; that said act of the Legislature was void and of no effect for the reason that it was passed by a legislature that was not a constitutionally composed assembly in that it had refused to follow the mandates of the people as set forth in the Constitution of Oklahoma pertaining to its membership.

It was further alleged that Sections 9, 9(a), 9(b) and 11 of Article 5 of the Oklahoma Constitution defines the State Senate, designates the number thereof, creates senatorial districts, and directs, and commands the Legislature at its first meeting following the 1910 federal census to redistrict the state so as to provide senatorial districts of equal population, and further commands the said Legislature to redistrict said state following each decennial federal census thereafter on the same basis. That under the provisions of Sections 10, 12, 13, 14, 15 and 16 of said Article 5 of the Oklahoma Constitution the House of Representatives was created and it was further provided that at the first session following the 1910 federal census the Legislature must reapportion its membership and each ten years thereafter, setting a fixed and definite formula to be used in making such reapportionment so that there would be equal representation in the Legislature of all the people of the state.

It was further alleged that the Legislature followed its constitutional duty after the 1910 federal census and again after the 1920 federal census in reapportioning the state, but that since 1921 there had been no valid reapportionment of the state as held by the Supreme Court of Oklahoma in the cases of Jones v. Freeman, 193 Okl. 554, 146 P.2d 564 and Romang v. Cordell, 206 Okl. 369, 243 P.2d 677. That the 1955 legislative assembly met in direct violation of the provisions of the Constitution and that all acts of said legislative assembly were null and void and particularly the act forming the basis for the prosecution of the petitioner. That by reason thereof the respondent in attempting to try the petitioner was making an unauthorized application of judicial force and should be prohibited from proceeding further with said cause.

The response was in the nature of a demurrer to said petition alleging that the material allegations of fact were insufficient to entitle petitioner to the relief prayed.

■ Assuming that the members of the 1955 Legislature were not selected in the manner provided by the Constitution, still the acts of such legislative body would be those of de facto officers. In Ex parte Crump, 10 Okl.Cr. 133, 135 P. 428, 432, 47 L.R.A.,N.S., 1036, this court held:

> "An 'officer de facto' is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the duties and functions of the office are exercised by one who was in the actual possession of it under color of title."

■ In Mitchell v. Carter, 31 Okl. 592, 122 P. 691, 692, the Supreme Court of Oklahoma quoting from Ex parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765, said:

> "'The result of the authorities is that title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked.'"

■ To sustain the contention of the petitioner would result in creating a state of chaos and confusion. Probably 95 percent of the prisoners now confined in penal institutions of the state have been committed for violating some statute enacted subsequent to what the petitioner claims was the last valid apportionment act of the Legislature and they would be entitled to their discharge. Property rights have been created pursuant to statutes enacted by the legislative assemblies, marriages have been contracted and divorces granted pursuant to legislative enactment. Public offices have been created and appropriations made to pay the salaries of such officers. To hold for the petitioner would result in the abolition of the Highway Patrol. It would

result in the rescission of the laws authorizing. the creation of turnpikes and toll roads. The appropriations under which every department of state government now operates would be illegal and the very functions of government would cease. These and many more illustrations could be used to show the utter folly of the issuance of an order such as that sought by the petitioner. On the grounds of public policy and due regard for the administration of justice and an orderly system of laws and government, the writ of prohibition should be denied. It is so ordered.

BRETT and POWELL, JJ., concur.