**Carroll Dwight HENRY, Plaintiff in Error,**

v.

**OKLAHOMA TURNPIKE AUTHORITY et al., Defendants in Error.**

**No. 42383.**

Supreme Court of Oklahoma.

Dec. 23, 1970.

Grove & Pryor, Oklahoma City, for plaintiff in error.

McKeever, Glasser, McKeever & Conrad, by Douglas McKeever, Enid, for defendant in error, Oklahoma Turnpike Authority.

Floyd W. Taylor, Oklahoma City, for amicus curiae.

DAVISON, Justice.

This appeal is presented by plaintiff in error, Carroll Dwight Henry, hereinafter referred to as plaintiff, against the defendant in error, Oklahoma Turnpike Authority, hereinafter referred to as defendant, from an order of the trial court sustaining defendant's demurrer to plaintiff's petition and thereafter denying plaintiff motion for a new trial. The above designated parties are the parties involved in this appeal.

The action originally included as defendants a number of parties but all defendants, with the exception of the present defendant and Hallett Construction Company, a corporation, were dismissed from the suit.

Plaintiff's petition alleged that about 8:30 p.m. plaintiff was driving his car south on a public detour adjacent to U.S. Highway No. 62, approximately two miles north of Newcastle. The detour had been constructed to route traffic around the area of the "Newcastle Exchange" during the construction of the H. E. Bailey Turnpike; that immediately prior to the involved accident Hallett Construction Company, by their agents and servants, to comply with a contract to perform work on the H. E. Bailey Turnpike let to them by the defendant, Oklahoma Turnpike Authority, obliterated, salvaged, and stock piled the asphalt black base that made up a portion of the public detour. That in this process the Hallett Construction Company, by their agents and servants, under their supervision and to the satisfaction of the engineer of the defendant, wrongfully and negligently excavated a deep and dangerous trench in and across the public detour road and that the parties wrongfully, carelessly and negligently allowed the trench to remain across the public detour without any protection, fence, light or signal to indicate danger or give notice to travelers.

Plaintiff further alleged that by reason of the negligence hereinabove described he drove his car into the trench and as a result he was permanently injured for which he prayed a damage award.

The trial court sustained the defendant's demurrer on the theory that defendant was an instrumentality of the State of Oklahoma engaged in essential governmental functions of the State with all attributes thereof and was immune to suit.

For a determination of the question involved it becomes necessary to consider the various enactments by the legislature.

The original Turnpike Act, passed in 1947 (later amended in 1959 and appearing in 69 O.S. § 653(a)) provided as follows:

"There is hereby created a body corporate and politic to be known as the 'Oklahoma Turnpike Authority,' and by that name the Authority may sue and be sued, and plead and be impleaded. The Authority is hereby constituted an instrumentality of the State and the exer-

cise by the Authority of the powers conferred by this Act, in the construction, operation and maintenance of Turnpike projects shall be deemed and held to be an essential governmental function of the State. Provided, however, this shall not be construed to relieve said Authority from liability for personal injuries or property damages incurred by it through its negligence or the negligence of its servants or agents, and in addition thereto it shall be subject to Workmen's Compensation Laws of the State the same as a private construction project."

The accident involved herein occurred while the amended act of 1959, 69 O.S. 1961, § 653, was in effect and the present litigation is governed by said Act. This enactment provides as follows:

"a). There is hereby created a body corporate and politic to be known as the 'Oklahoma Turnpike Authority,' and by that name the Authority may sue and be sued, and plead and be impleaded. The Authority is hereby constituted an instrumentality of the State, and the exercise by the Authority of the powers conferred by this Act in the construction, operation, and maintenance of turnpike projects shall be deemed and held to be an essential governmental function of the State with all the attributes thereof. *Provided, however, the Turnpike Authority is authorized to carry and shall carry liability insurance to the same extent and in the same manner as the State Highway Commission,* and in addition thereto it shall be subject to the Workmen's Compensation Laws of the State the same as a private construction project." (emphasis ours)

It will be noted that the original 1947 Act was amended by the 1959 Legislature, by three important changes:

(1) The words "with all the attributes thereof" were added to the words making the Authority an essential governmental function.

(2) The words, "Provided, however, this shall not be construed to relieve said Authority from liability for personal injuries or property damages incurred by it through its negligence or the negligence of its servants or agents," were stricken from the Statute.

(3) The words, "Provided, however, the Turnpike Authority is authorized to carry, and shall carry, liability insurance to the same extent and in the same manner as the State Highway Commission" were added to the Statute.

The State Highway Commission Act governing liability insurance was passed in 1955 and was the effective law at the time of the accident involved herein. The Act is now shown as 47 O.S.1961, §§ 157.1 to 157.3. Section 157.1 reads as follows:

"The State Highway Department, the State Board of Agriculture, and the State Department of Public Welfare of the State of Oklahoma are hereby authorized to carry insurance on vehicles, motorized machinery, or equipment owned and operated by the State Highway Department, the State Board of Agriculture, and the State Department of Public Welfare, such insurance to be of the following kinds and in the following amounts: * * *"

The pertinent part of § 157.3, supra, reads as follows:

"* * * The insurer may not plead as a defense in any action involving insurance purchased by the authority of this act the governmental immunity of either the State of Oklahoma, the State Highway Department, the State Department of Agriculture, or the State Department of Public Welfare, or any other subdivision of state government."

We are of the opinion that by the 1959 Act, supra, the legislature intended to repeal the liability to suits in tort, but retaining its liability in other actions. Also by said Act the legislature intended to require the Authority to carry liability insurance in conformance with the law relative to the Highway Commission, and with the provision that in a suit in tort against it, the insurance company could not plead govern-

mental immunity from suit against the Authority.

■ There is nothing in the 1959 Act constituting a waiver of immunity to suits in tort actions, except the limited waiver of permitting the purchase of liability insurance in limited amounts as described by statute.

Oklahoma is committed to the rule that *Turnpikes are public highways,* Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795; Application of Oklahoma Turnpike Authority, Okl., 348 P.2d 510.

■ This state has long been committed to the rule, without a single exception, that the State is immune from suits without its waiver or consent. Jack v. State, 183 Okl. 375, 82 P.2d 1033 (1937); State ex rel. Com'rs of Land Office v. Duggins, Okl., 258 P.2d 891 (1955); National Surety Co. v. State Banking Board, 49 Okl. 184, 152 P. 389 (1915); State ex rel. Com'rs of Land Office v. Board of Com'rs of Nowata County, 166 Okl. 78, 25 P.2d 1074 (1933); Wentz v. Potter, 167 Okl. 154, 28 P.2d 562 (1934); Hawks v. Walsh, 177 Okl. 564, 61 P.2d 1109 (1956); State Highway Commission v. Brixey, 178 Okl. 118, 61 P.2d 1114 (1936); State Highway Commission v. Adams, 178 Okl. 270, 62 P. 2d 1013 (1937); Antrim Lumber Co. v. Sneed, 175 Okl. 47, 52 P.2d 1040 (1936); State ex rel. Department of Highways v. Keen, Okl., 354 P.2d 399 (1960); Hawks v. Bland, 156 Okl. 48, 9 P.2d 720 (1932); James v. Trustees, 18 Okl. 56, 90 P. 100 (1907); Love v. Filtsch, 33 Okl. 131, 124 P. 30 (1912); Patterson v. City of Checotah, 187 Okl. 587, 103 P.2d 97 (1940); Donaldson v. Board of Regents, 190 Okl. 269, 122 P.2d 139 (1942); Duncan v. State Highway Commission, Okl., 311 P.2d 203 (1957); Mountcastle v. State, Okl., 193 Okl. 506, 145 P.2d 392 (1944); State ex rel. Williamson v. Superior Court of Seminole County, Okl., 323 P.2d 979 (1958).

The above cases involve situations where the State was acting in a governmental capacity.

■ Plaintiff contends that defendant has waived its right to sovereign immunity by virtue of the fact that Title 69 O.S. 1961, § 653, supra, requires the Turnpike Authority to carry liability insurance. We cannot agree with this statement for the reason that said statute requires only a limited insurance liability to be purchased in accordance and in the limited amounts set forth in 47 O.S.1961, §§ 157.1 to 157.5. This statute did not authorize a full and complete waiver and we so hold.

We are aware of the fact that several states, by court opinions, have abandoned and discarded the rule of governmental immunity *as concerns State Governments,* to wit: Arizona, New Jersey and Idaho.

It is also true that in several states including Nebraska, Kentucky, Tennessee, Illinois, Oregon and Indiana, that where a liability insurance policy protects the government the immunity is waived to the extent of the insurance coverage.

Plaintiff also relies on the Kansas case of Carroll v. Kittle, 203 Kan. 841, 457 P.2d 21. In that case the Kansas court was deciding a case involving a state medical hospital in which it found a proprietary function was involved rather than a governmental function. In that case no statutes were involved and the court stated that governmental immunity was of judicial origin in Kansas. It is interesting to note that the Carroll case did not mention the case of Miller v. Kansas Turnpike Authority, 193 Kan. 18, 392 P.2d 89.

In Miller (1964) the Supreme Court of Kansas held that the Turnpike Authority was immune from liability on theories of tort and breach of implied warranty of safety under the doctrine of governmental immunity.

Plaintiff further argues that the doctrine of sovereign immunity be abolished as to all bodies of the State when engaged in private or proprietary activities as distinguished from governmental functions. Pursuing this argument it is only necessary for this court to determine the question as to whether the Turnpike Authority is act-

ing as a governmental agency and acting in a governmental capacity. We hold that the Turnpike Authority is a governmental agency acting in its governmental capacity.

We held in Application of the Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795, that when all bonds issued under the provisions of the Act have been paid, such project may, under the terms of the Act, become a part of the highway system, and shall thereafter be maintained by the State Highway Commission, free of tolls. The opinion states: "This clearly establishes that the turnpike project is the property of the State of Oklahoma."

In the case of Application of Oklahoma Turnpike Authority, Okl., 348 P.2d 510, at page 522, we said:

"Surely it is within the discretion of the Legislature to provide that the Authority may sue and be sued; that it is constituted an instrumentality of the state; that the exercise of its powers shall be deemed and held to be an essential governmental function of the state; that it is required to carry liability insurance the same as the State Highway Commission, and that Authority shall be subject to the Workman's Compensation Laws of the State."

In the case of Oklahoma Turnpike Authority v. Powers, District Judge, Okl., 421 P.2d 254, we said:

"Title 69 O.S.1961, Sec. 652, constitutes the Authority an instrumentality of the State and the exercise of its conferred powers are deemed to be an essential governmental function."

The turnpikes are a part of the highway system of this State and will become the property of the State upon the payment of all outstanding bonded obligations. The Turnpike Authority is required to make annual reports to the Governor.

The operation of a turnpike is not in competition with any other business. As was pointed out in the case of Westmore-

land Chem. & Color Co. v. Public Service Commission, 294 Pa. 451, 144 A. 407, highways, such as turnpikes, are the property of the State and in the building of such the State is acting in its governmental capacity, rather than business capacity.

The above cited case also states:

"The fact that a toll is exacted from users of turnpike does not change the character of its operation from that of a governmental function. In Gieger v. [President, etc., of] Perkiomen & Reading Turnpike Road, 167 Pa. 582, 31 A. 918, 28 L.R.A. 458, the Supreme Court said:

" 'The taking of tolls, it has been held, is another method of taxing the public for the cost of construction, repair and reimbursement to the corporation for capital invested. * * *' "

In the case of Brush v. Commissioner of Internal Revenue, 300 U.S. 352, 372, 57 S. Ct. 495, 81 L.Ed. 691, the United States said:

"The Turnpike Commission, having but one function to perform, does not come within the rule making a distinction between governmental functions and business or corporate functions of a municipality. * * * The only (pertinent) authority given to the Turnpike Commission under the statute is the construction, maintenance, and operation of the turnpike, which is a governmental function. * * * It follows that there can be no liability unless it be expressly imposed. * * * There is nothing in the Turnpike Act imposing such liability, and the provision of the statute that the commission may sue and be sued is not sufficient for that purpose. * * * "

Also see the cases of Rader v. Pennsylvania Turnpike Commission, 407 Pa. 609, 182 A.2d 199 (1962) and Thomas v. Baird, 433 Pa. 482, 252 A.2d 653 (1969).

The plaintiff relies heavily on the case of State, ex rel. State Insurance Fund v.

Bone, Okl., 344 P.2d 562. We think the cited case is readily distinguishable from the present case. In the Bone case independent control was given by the legislature to the Fund to operate and maintain an insurance company in the same manner as may be done by any privately owned company. The Fund was regarded as an independent business enterprise or entity and in competition with all other insurance companies writing similar policies. The opinion pointed that out. The opinion held that the Fund, under the authority granted it by the legislature, was acting in a proprietary capacity. The opinion held, however, that the authorization of suits against the Fund in no way contravened the constitutional limitation of suits against the State. The opinion further provided that under no circumstances could the general funds of the State be reached in order to satisfy obligations of the Fund.

We are of the opinion that the case of Hawks v. Walsh, supra, is applicable to the situation before us. Therein we said:

"The right of the sovereign state to immunity from suit is a public right and must not be treated as relinquished or conveyed away by inference or construction, and statutes must clearly permit the States to be sued or the right to do so will not exist."

The doctrine of governmental immunity has long been the law and public policy of this State. This doctrine has long been recognized and followed by this court. We see no compelling reason for us to disrupt the present policy of the State and overrule a long line of past decisions. If the present policy is to be changed it should be done by the legislature, as representatives of the people, and not by this court.

Judgment affirmed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, JACKSON and LAVENDER, JJ., concur.

BLACKBIRD, HODGES and McINERNEY, JJ., dissent.