OSCN Found Document:Question Submitted by: Senator Mary B. Boren, Oklahoma State Senate, District 16

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: Senator Mary B. Boren, Oklahoma State Senate, District 16
2024 OK AG 5
Decided: 02/28/2024
Oklahoma Attorney General Opinions

Cite as: 2024 OK AG 5, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Under Oklahoma law, may the same individual serve simultaneously as the Secretary of Transportation, Executive Director of the Oklahoma Department of Transportation, and Executive Director of the Oklahoma Turnpike Authority?
2. What is the proper action if an officer of the state unlawfully holds more than one office?
3. What are the legal ramifications of executive actions by an official who is unlawfully holding multiple offices?
I.
SUMMARY
¶1 This office finds that under the current powers and duties of the Secretary of Transportation, the Executive Director of the Oklahoma Department of Transportation, and the Executive Director of the Oklahoma Turnpike Authority each constitute an "office" for purposes of the dual office holding prohibition in title 51, section 6 (2021). Further, it is a violation of the dual office holding prohibition for a single individual to serve simultaneously in any two or more of these roles.
¶2 If a state officer enters upon the duties of a second office in violation of the dual office holding prohibition, it operates as a vacation of the first office. The vacation of the first office is self-executing and notwithstanding the person's intention of continuing to hold the first office. However, the Oklahoma Supreme Court has on numerous occasions held the acts of a de facto officer are as binding as those of a de jure officer and that these acts were valid when the interest of the public and third persons were involved. Therefore, official actions involving the public interest and third persons, though made by officials who are not qualified to serve but act as de facto officers under color of title, are valid, binding, and enforceable.

II.
BACKGROUND
¶3 Oklahoma prohibits state officers and deputies from simultaneously holding another state office or serving as the deputy of any other state office.[1] 51 O.S.2021, § 6. As of the time of writing, the Legislature has enumerated thirty exceptions to this prohibition. However, none of these exceptions applies to the Secretary of Transportation, Executive Director of the Oklahoma Department of Transportation ("ODOT"), or Executive Director of the Oklahoma Turnpike Authority ("OTA").
¶4 Before statehood, the Oklahoma Supreme Court established that "a public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised for the benefit of the public." Guthrie Daily Leader v. Cameron, 1895 OK 71, ¶ 8, 41 P. 635, 636 (quoting MECHEM, PUBLIC OFFICERS (1889)).
¶5 The Oklahoma Supreme Court distilled this declaration into three elements in Oklahoma City v. Century Indemnity, Co. Those elements are as follows:
1. the position was created or authorized by law;
2. the law imposes certain definite duties upon the position holder; and
3. the duties imposed involve "the exercise of some portion of sovereign power . . . ."

1936 OK 589, ¶ 21, 62 P.2d 94, 97 (emphasis added). "[A] position [having] these three elements is presumably an 'office,' while one [lacking] any of them is a mere 'employment.'" Id. (quoting Winsor v. Hunt, 243 P. 407, 413 (Ariz. 1926). In Guthrie Daily Leader, the Court explained the third element as follows:
The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, to be exercised for the public benefit. 

Guthrie Daily Leader, 1895 OK 71, ¶ 10, 41 P. at 636 (quoting MECHEM, PUBLIC OFFICERS (1889)).
¶6 Thus, barring an exception, an individual violates title 51, section 6 by satisfying the elements established in Century Indemnity while holding two or more offices simultaneously.

III.
DISCUSSION
A. Simultaneously serving as the Secretary of Transportation, Executive Director of the ODOT, and Executive Director of the OTA violates the dual office holding prohibition in title 51, section 6 (2021).
¶7 Your question requires an examination of whether each position meets the elements of an "office" as provided by the Oklahoma Supreme Court in Century Indemnity. This office will address each position in turn.

1. Executive Director of the ODOT

¶8 The position of Executive Director of ODOT clearly meets each element of the foregoing Century Indemnity test. First, the position, is expressly established by ODOT's enabling statutes. Second, the Executive Director has the "authority and duty to supervise, direct, account for, organize, plan, administer and execute the functions of the [ODOT] . . . ." 69 O.S.2021, § 4007(A). Finally, in carrying out the "transportation policies, plans and programs of [the] state," the Director exercises sovereign power. 69 O.S.2021, § 4002. For instance, the Director has the power to "coordinate the development and operation of such transportation facilities in the state including, but not limited to, highways, public transportation, railroad, marine and waterways and aeronautics" and to "apply for, accept and receive and be the administrator for and in behalf of the state agencies, boards and commissions of all federal or other monies now or hereafter available for purposes of transportation . . . ." 69 O.S.2021, § 4002(2), (7). Accordingly, the Executive Director of ODOT is an office within Century Indemnity. And, without an exception in title 51, section 6, the Executive Director is subject to the dual office holding prohibition under Oklahoma law.

2. Secretary of Transportation

¶9 As detailed below, the Secretary of Transportation (the "Secretary") is also an "office" under Century Indemnity. While specific Cabinet posts are not expressly created by law--excluding the Secretary of Veterans Affairs--the Governor's statutory authority to create a cabinet system for Oklahoma's executive branch authorizes the position of Secretary. 74 O.S.2021, § 10.3. Under the law, cabinet secretaries perform certain duties as follows:
The cabinet Secretaries shall:
1. Advise the Governor of any policy changes or problems within the area they represent;
2. Advise the entities represented of any policy changes or problems as directed by the Governor; and
3. Coordinate information gathering for the Legislature as requested.

Id. § 10.3(B).
¶10 Historically, most cabinet secretaries have served in merely an advisory capacity, which is not the exercise of sovereign power.[2] However, in 2000, this office concluded that the Secretary of Commerce exercises sovereign power by virtue of having a seat on a board or commission with authority to issue revenue bonds. 2000 OK AG 54, ¶ 14. Similarly, the Secretary is authorized to create the Advanced Mobility Program Advisory Council, which shall provide policy and regulatory recommendations to the Secretary on issues relating to advanced mobile technologies. 3 O.S.Supp.2023, § 374(A). And, subject to the availability of funds, the Advanced Program is authorized to annually award matching grants up to $500,000 each. Id. § 374(E). Additionally, the Secretary is a member of the Land Mobile Radio Public Safety Interoperability Cooperative, which is established for the purpose of "unifying, stabilizing and enhancing" the public radio safety system communications in Oklahoma. 62 O.S.2021, § 35.6.2(A). Further, the Secretary is authorized to approve areas to be designated as "urban areas" for purposes of permitting outdoor advertising signs in Oklahoma. 69 O.S.2021, § 1273.
¶11 Moreover, cabinet secretaries have recently been provided with additional oversight responsibilities and authority to control agency operations, including rulemaking and expenditures. Under the Governor's most recent executive order establishing cabinet posts, the Secretary is responsible for thirteen executive branch agencies.[3] When Senate Bill 913 was passed in 2021, it vested all cabinet secretaries with the ability to unilaterally veto the rulemaking efforts of their respective reporting agencies--a substantial degree of executive authority that is tantamount to outright rulemaking power. 75 O.S.2021, § 303(A)(6).
¶12 Furthermore, agencies must obtain their Secretary's approval to hire a lobbyist and/or apply for any grant exceeding $50,000, and not granted by the federal government.[4] See Exec. Order No. 2019-29, OAC 1:2019-29 (July 5, 2019) and Am. Exec. Order No. 2019-40, OAC 1:2019-40A (March 23, 2021). Notably, a current Executive Order also empowers the Secretary to approve or deny the following for each of its reporting agencies: (1) membership(s) in any private or public organization if the costs of the membership(s) collectively exceed $500, (2) non-essential out-of-state travel for any agency employee that is wholly paid for by an entity other than the State, and (3) any non-emergency purchase that exceeds $25,000. See Exec. Order No. 2023-4, OAC 1:2023-4 (Feb. 28, 2023).
¶13 With the elevated duties now delegated to all cabinet secretaries, the Secretary's duties have grown beyond an advisory role to include exercising sovereign power. In light of the foregoing, this office concludes that the Secretary is an officer of the State of Oklahoma and is therefore subject to the dual office holding prohibitions in title 51, section 6.

4. Executive Director of the OTA

¶14 While a more detailed analysis is required, the Executive Director of the OTA also holds an "office" under Century Indemnity. The purpose of the OTA is to construct, operate, and maintain turnpike projects. 69 O.S.2021, § 1701. The OTA is established pursuant to statute which provides:
There is hereby created a body corporate and politic to be known as the "Oklahoma Turnpike Authority. . . ." The Authority is hereby constituted an instrumentality of the state, and the exercise by the Authority of the powers conferred by this act in the construction, operation, and maintenance of turnpike projects shall be deemed and held to be an essential governmental function of the state with all the attributes thereof. 
69 O.S.Supp.2023, § 1703(A) (emphasis added).
¶15 The Oklahoma Supreme Court has held that the OTA is a "governmental agency" acting in a "governmental capacity."[5] Henry v. Okla. Tpk. Auth., 1970 OK 232, ¶ 22, 478 P.2d 898, 902. The property managed by the OTA is property of the State of Oklahoma. See Application of the Okla. Tpk. Auth., 1950 OK 208, ¶ 19, 221 P.2d 795, 803; 69 O.S.2021, § 1717.
¶16 The position of Executive Director is statutorily authorized under title 69, section 1705. 69 O.S.2021, § 1705(k). The Oklahoma Supreme Court has held that an "office or position which is created . . . pursuant to power conferred by the Legislature upon [a] governing body is just as much created by law as if the Legislature itself had acted . . . ." Century Indemnity, 1936 OK 589, ¶ 28, 62 P.2d at 98. Additionally, OTA's administrative rules, which have the effect of law, authorize the Executive Director position.[6] OAC 731:1-1-3(b).
¶17 The law also imposes certain definite duties upon the Executive Director. For instance, the OTA's administrative rules allow the Executive Director to extend the term of a contractor's prequalification to bid on authority projects. See OAC 731:10-1-2(n). Further, the Executive Director has the authority to lift or suspend a contractor's debarment from bidding on OTA contracts. OAC 731:10-1-5(7).
¶18 The position of Executive Director of OTA is thus clearly established by law and provides definite duties. Therefore, the first two elements of the Century Indemnity test are met. For the reasons set forth below, the duties imposed also involve the exercise of some portion of the State's sovereign power.
¶19 Again, exercising sovereign power requires that some portion of the state's sovereignty--whether legislative, executive, or judicial--attaches for the time being, to be exercised for the public benefit. Guthrie Daily Leader, 1895 OK 71, ¶ 10, 41 P. at 636. In Guthrie Daily Leader, the Court went on to describe the exercise of sovereign power as follows:
The term "office" implies a delegation of some portion of the sovereign power to, and a possession of it by the person filling the office, and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still, it is a legal power, which may be rightfully exercised, and, in its effects, will bind the rights of others, and be subject to revisions and corrections only according to the standing laws of the state.

Id., 1895 OK 71, ¶ 15, 41 P. at 636 (quoting [Bunn] v. People ex rel. Laflin, 45 Ill. 397, 409 (1867)).
¶20 This office concludes that the Executive Director exercises some portion of the sovereign power for six reasons. First, Oklahoma law expressly authorizes the Executive Director to serve as an administrative review officer on an appeal of a toll evasion violation. 47 O.S.Supp.2022, § 11-1401.2. The Executive Director's final decision binds the contestant, subject only to revision and correction of a district court having jurisdiction in the county where the contestant lives. Id. Second, as discussed above, the Executive Director can lift or suspend a contractor's debarment from bidding on OTA contracts, thereby binding the rights of others.[7] OAC 731:10-1-5(7); Ex parte Tindall, 1924 OK 669, ¶ 24, 229 P. 125, 130 ("The police power is an attribute of sovereignty . . . .").
¶21 Third, the Executive Director has the authority to negotiate and execute contracts. At the OTA's December 12, 2023, meeting, the Executive Director was authorized to negotiate and execute contracts on no fewer than ten agenda items, including statements of work in an amount not to exceed $13,964,776.40 and separately, construction management contracts not to exceed $14,000,000. See December 12, 2023, Meeting Agenda, OTA, Items 1138 and 1142. Fourth, Oklahoma law authorizes the OTA to authorize the Executive Director to approve change orders not exceeding $250,000. 61 O.S.Supp.2022, § 121. Fifth, the OTA recently amended its bylaws to authorize the Executive Director to take the following action:
1. call a special meeting of the Authority pursuant to the Oklahoma Open Meeting Act;
2. execute in the name of the Authority, checks, drafts and orders drawn on the commercial trust accounts or checking accounts of the Authority;
3. execute in the name of the Authority, drafts and orders drawn on the revolving fund account in any bank or trust company;
4. negotiate and execute the following contracts and expenditures without the Authority's approval:

a. contracts not exceeding the sum of $750,000,
b. payroll, without limits, and
c. change orders and supplemental agreements on contracts when the amount does not exceed $150,000.[8]

OTA Bylaws, attached to the January 9, 2024, OTA Board Meeting Agenda and on file with the author. Finally, the Executive Director is required to give a bond to the Authority before entering upon his duties, which is one characteristic of a public officer exercising the sovereign's power. 2018 OK AG 11; 1979 OK AG 41.
¶22 Three prior opinions of this office further support the conclusion that the Executive Director of the OTA is an "office" under Century Indemnity. First, in 1985, this office determined that a member of the OTA held an office for purposes of the dual office holding prohibition, in part, because of the sovereign functions of adopting rules and regulations and the ability to collect and pledge revenues. 1985 OK AG 58. Second, this office previously concluded that a position with duties of receiving, giving, and disbursing funds attributable to a governmental entity is an "office." 2018 OK AG 11. Finally, conducting and managing business affairs of a governmental body, making and executing contracts, purchasing necessary equipment, and appointing and employing such officers and employees has been determined to be the exercise of some portion of the sovereign power. 1983 OK AG 220.
¶23 The Executive Director clearly exercises some portion of the sovereign power. Accordingly, the Executive Director is an officer for purposes of the dual office holding prohibition in title 51, section 6.
¶24 In determining that all three positions are an "office," this office considers, in turn, if any exceptions to the dual office holding prohibition exist in law. The Legislature has provided thirty exceptions to the dual office holding prohibition, but none of those exceptions include the Executive Director of the OTA, ODOT, or Secretary. See 51 O.S.2021, § 6. Notably, state statutes allow ODOT to contract with the OTA for "[r]ecord keeping, reporting, administrative, planning, engineering, legal and clerical functions of the Authority not in conflict with provisions of existing trust agreements." 69 O.S.2021, § 4010. However, the statute contemplates such an agreement would include the "temporary transfer of personnel" not permanent sharing of the principal executive officer. Id. (emphasis added). This office does not construe such personnel-sharing arrangements to constitute an exception to the dual office holding prohibition.[9]
¶25 In light of the foregoing, this office finds that it is a violation of title 51, section 6 for a single individual to serve simultaneously in any two or more roles as the Secretary, Executive Director of ODOT, and Executive Director of OTA.
¶26 You further asked this office to opine on whether the OTA's 1989 Trust Agreement prohibits the Executive Director from serving in other roles as Secretary and the Executive Director of ODOT.
[10] Given the above analysis, finding violations of Oklahoma's dual office holding prohibitions, it is not necessary to reach this question regarding the 1989 Trust Agreement.
B. When an office holder accepts and enters upon the duties of a second office, acceptance of the second office operates to ipso facto vacate the first office. 
¶27 The Oklahoma Supreme Court has long held that "entering upon the duties of a second office or acceptance of a prohibited office ipso facto operates as a vacation of the first office, notwithstanding the person's intention of continuing to hold the first office." Nesbit v. Apple, 1995 OK 20, ¶ 24, 891 P.2d 1235, 1243 (citing Wimberly v. Deacon, 1943 OK 432, 144 P.2d 447). Though the Wimberly case involved the dual office holding prohibition found in section 12, article II, of the Oklahoma Constitution, the Oklahoma Supreme Court has further determined that the self-executing nature of the dual office holding prohibition would apply under a similar statutory prohibition.[11] See Gibson v. Crowder, 1946 OK 22, ¶ 10, 165 P.2d 628, 629 ("The same rule would apply in considering similar statutory provisions.").
¶28 Should a conflict of interest arise on the part of the appointing authority or should the office holder attempt to maintain his vacated office(s) under color of title, relief may be obtained through civil action.[12]
C. Official actions involving the public interest and third persons, though made by officials who are not qualified to serve, but act as de facto officers under color of title, are valid, binding, and enforceable.
¶29 Your last question involves the enforceability or validity of official actions taken by an official who is not properly serving in office. The validity or enforceability of the official's prior official actions depends on whether the individual is a de facto officer.
An "officer de facto" is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the . . . functions of the office are exercised by one who was in the actual possession of it under color of title.

Hatfield v. Jimerson, 1961 OK 250, ¶ 9, 365 P.2d 980, 982 (quoting State ex rel. Tayrien v. Doggett, 1956 OK CR 45, ¶ 6, 296 P.2d 185, 186).
¶30 When determining whether a judge--who was not qualified to serve in the office--was a de facto judge, the Oklahoma Supreme Court stated:
While mere possession of the office is not sufficient to make the incumbent a de facto judge, possession plus color of title to the office, if the office actually exists, is considered sufficient. Clearly, in the instant case, the appointment was not void on its face, for it was signed by the Governor of the state, the appointee took the oath of office, filed the statement thereof with the proper official, and actively assumed the duties of the office. He thus performed the duties with a color of right, or color of title to the office.

Sheldon v. Green, 1938 OK 165, ¶ 8, 77 P.2d 114, 115. The Court further stated that "the acts of a de facto officer are as binding as those of a de jure officer. This principle is well recognized and applies as thoroughly to the office of judge as it does to other public offices." Id., 1938 OK 165, ¶ 8, 77 P.2d at 116 (emphasis added).
¶31 The Oklahoma Supreme Court has on numerous occasions held that public officials were de facto officers when lacking some qualification(s) to hold their office but that their acts were valid when the interest of the public and third persons is involved. See, e.g., Ajax Contractors, Inc. v. H.L. Myatt, 1967 OK 19, ¶ 17, 424 P.2d 30, 33--34. Therefore, official actions involving the public interest and third persons, though made by officials who are not qualified to serve but, without having prior notice otherwise, act as de facto officers under color of title, are valid, binding, and enforceable.[13]

¶32 It is, therefore, the official Opinion of the Attorney General that:
1. A single individual holding one or more offices simultaneously as the Secretary of Transportation, Executive Director of the Oklahoma Department of Transportation, and the Executive Director of the Oklahoma Turnpike Authority violates the dual office holding prohibition in title 51, section 6 (2021).
2. When an office holder accepts and enters upon the duties of a second office, acceptance of the second office operates to ipso facto vacate the first office. 

3. Official actions involving the public interest and third persons, though made by officials who are not qualified to serve but act as de facto officers under color of title, are valid, binding, and enforceable.

 
GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
A. CHASE SNODGRASS
DEPUTY ATTORNEY GENERAL

FOOTNOTES
[1] "[N]o person holding an office under the laws of the state and no deputy of any officer so holding any office shall, during the person's term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the state." 51 O.S.2021, § 6(A).
[2] See 2000 OK AG 54(states that Cabinet Secretaries functions consist of "giving opinions and performing clerical work" based on the authorizing statute title 74, section 10.3(1991)); 2005 OK AG 28(finding that the Secretary of Finance and Revenue had no specific statutory duties and therefore did not exercise sovereign power).
[3] The Secretary is responsible for the following executive entities or their successors: ODOT, OTA, OTA Board, Transportation Commission, ODOT County Advisory Board, ODOT Tribal Advisory Board, Committee on the Pilot Shortage, Highway Construction Materials Technician Certification Board, Interstate Midwest Reginal Passenger Rail Compact Commission, Oklahoma Aeronautics Commission, Oklahoma Tourism Signage Advisory Task Force, Tri-State Commission on the McClellan-Kerr Arkansas River Navigation System, and Waterways Advisory Board. Order No. 2023-8, OAC 1:2023-8 (Sept. 13, 2023).
[4] If an executive order has a specific statutory foundation, is designed to enforce the law and not accomplish a legislative result, it has the effect of a statute. 1996 OK AG 31; 1995 OK AG 36; City of Albuquerque v. U.S. Dep't of Interior, 379 F.3d 901, 913 (10th Cir. 2004).
[5] While not necessary to the analysis here, this office and the Oklahoma Supreme Court have also categorized the OTA in other ways. See 1977 OK AG 110(the OTA is "not the 'State' nor one of the 'departments thereof . . . .'"); In re Appl. of the Okla. Capitol Improvement Auth., 2022 OK 31, ¶ 2 n.2, 507 P.3d 1256, 1257 n.2 ("The Oklahoma Capitol Improvement Authority is a quasi-governmental entity created by statute. Title 73 O.S.2021, ch. 6, § 152 defines the OCIA as a 'body corporate and politic' and an 'instrumentality of the state."); Hirschfeld v. Okla. Tpk. Auth., 2023 OK 59, ¶ 7, 541 P.3d 811, 817 (referencing the OTA as a public trust). And, after all, the OTA has recently declared itself to be an executive branch agency. See Okla. Tpk. Auth. v. Treat (In re Constitutionality of HB 2263), No. CV-24-72, Dist. Ct. Okla. Cnty., Okla.); Petition, at 8, ¶ 17 (Jan. 9, 2024).
[6] 75 O.S.2021, § 308.2(C) ("Rules shall be valid and binding on persons they affect, and shall have the force of law unless amended or revised or unless a court of competent jurisdiction determines otherwise. Except as otherwise provided by law, rules shall be prima facie evidence of the proper interpretation of the matter to which they refer.").
[7] Ex parte Tindall, 1924 OK 669, ¶ 25, 229 P. at 130 ("The term 'police power' comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal and protection of the public interests.").
[8] The OTA cited title 69, section 1705 as authority for the amendments. Section 1705(a) provides the Authority with the power to "adopt bylaws for the regulation of its affairs and conduct of its business." 69 O.S.2021, § 1705(a).
[9] Rodgers v. Higgins, 1993 OK 45, ¶ 18, 871 P.2d 398, 409 ("We should not read into the law that which is not there." (emphasis omitted)).
[10] On February 1, 1989, the OTA entered into a trust agreement with The Liberty National Bank and Trust Company of Oklahoma City (the "1989 Trust Agreement"). The 1989 Trust Agreement and its supplements essentially pledge the tolls or other revenues from turnpike projects for service of the bonds and provides for certain obligations to both parties. Section 706 of the 1989 Trust Agreement requires the OTA to employ a Chief Executive Officer who "shall devote his entire time to the performance of such duties." Trust Agreement between OTA and The Liberty National Bank and Trust Company of Oklahoma § 706 (Feb. 1, 1989) (emphasis added) (on file with author). There have been at least eighteen supplemental agreements to the 1989 Trust Agreement, which form a part thereof and ratify the original 1989 Trust Agreement. However, this office has not reviewed the supplemental agreements to determine if an amendment has been made to this "entire time" duty. Nonetheless, this office has previously addressed the meaning of the requirement to "devote his or her entire time to the duties" proscribed by a particular position. See 1987 OK AG 120¶ 12 (the operative language "mandates that the position . . . is a full-time position, and that the [individual] is prohibited from engaging in any other occupation or outside interests during regular business hours").
[11] In support of this holding, the Gibson court reasoned that the court in Wimberly quoted with approval the statement of the rule in Mecham, Public Officers:
Where, however, it is the holding of two offices at the same time which is forbidden by the constitution or the statutes, a statutory incompatibility is created, similar in its effect to that of the common law, and, as in the case of the latter, it is well settled that the acceptance of a second office of the kind prohibited, operates ipso facto to absolutely vacate the first. 
No judicial determination is therefore necessary to declare the vacancy of the first, but the moment he accepts the new office the old one becomes vacant.

Gibson, 1946 OK 22, ¶ 10, 165 P.2d at 629--30 (quoting Wimberly, 1943 OK 432, ¶ 27, 144 P.2d at 453); see also Mechem, Public Officers (1889).
[12] Forcible removal may be effectuated by an action in the nature of quo warranto. 12 O.S.2021, §§ 1531--1538; see also State ex rel. Stuart v. Rapp, 1981 OK 87, 632 P.2d 388. Any person serving as a state official who does not meet the qualifications of office or is holding office in violation of the dual office holding prohibition is unlawfully holding or exercising public office. Id. An action in the nature of quo warranto may be filed by the Attorney General or a district attorney on behalf of the State or by a person claiming an interest in the office. 12 O.S.2021, § 1533; see also Callendar v. Dist. Ct. for the Twentieth Jud. Dist., 1981 OK 16, ¶ 9, 625 P.2d 627, 630 (holding that the thirty-day limitation period for filing a quo warranto action in the statute did not apply to actions initiated by the district attorney or Attorney General). While the Attorney General or a district attorney may bring a quo warranto action, there is no explicit affirmative duty to do so.
[13] This opinion does not address the validity of executive actions taken by a state officer after the officer has received notice, from proper authority, that they are purporting to exercise a second office in violation of title 51, section 6 (2021).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2000 OK AG 54, 
Question Submitted by: The Honorable Angela Z. Monson, State Senator, District 48
Discussed

 
1979 OK AG 41, 
Question Submitted by: The Honorable David Young, District Attorney, District No. 24
Cited

 
1977 OK AG 110, 
Question Submitted by: Paul A. Wilbor, Vice-Chairman, State Board of Public Affairs
Cited

 
2005 OK AG 28, 
Question Submitted by: The Honorable Gus Blackwell, State Representative, District 61
Cited

 
2018 OK AG 11, 
Question Submitted by: The Honorable Greg McCortney, Oklahoma State Senate
Discussed

 
1983 OK AG 220, 
Question Submitted by: The Honorable Stratton Taylor, Oklahoma State Senate
Cited

 
1985 OK AG 58, 
Question Submitted by: The Honorable Frank Harbin, Oklahoma House of Representatives
Cited

 
1987 OK AG 120, 
Question Submitted by: Shirley Hastings, Executive Secretary, Oklahoma State Board of Cosmetology
Cited

 
1995 OK AG 36, 
Question Submitted by: The Honorable Gary C. Bastin, Oklahoma House of Representatives, District 94
Cited

 
1996 OK AG 31, 
Question Submitted by: The Honorable Don McCorkell, State Representative, District 72
Cited

Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1956 OK CR 45, 296 P.2d 185, 
STATE v. DOGGETT
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1993 OK 45, 871 P.2d 398, 64 OBJ 1255, 
Rodgers v. Higgins
Discussed

 
1895 OK 71, 41 P. 635, 3 Okla. 677, 
Guthrie Daily Leader v. Cameron
Discussed at Length

 
1938 OK 165, 77 P.2d 114, 182 Okla. 208, 
SHELDON v. GREEN
Discussed at Length

 
1946 OK 22, 165 P.2d 628, 196 Okla. 406, 
GIBSON v. CROWDER
Discussed at Length

 
1936 OK 589, 62 P.2d 94, 178 Okla. 212, 
OKLAHOMA CITY v. CENTURY INDEM. CO.
Discussed at Length

 
1961 OK 250, 365 P.2d 980, 
HATFIELD v. JIMERSON
Discussed

 
1967 OK 19, 424 P.2d 30, 
AJAX CONTRACTORS, INC. v. MYATT
Discussed

 
1995 OK 20, 891 P.2d 1235, 66 OBJ 785, 
Nesbitt v. Apple
Discussed

 
1970 OK 232, 478 P.2d 898, 
HENRY v. OKLAHOMA TURNPIKE AUTHORITY
Discussed

 
1924 OK 669, 229 P. 125, 102 Okla. 192, 
Ex parte TINDALL
Discussed at Length

 
2022 OK 31, 507 P.3d 1256, 
IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY
Discussed

 
2023 OK 59, 
HIRSCHFELD v. OKLAHOMA TURNPIKE AUTHORITY
Cited

 
1981 OK 16, 625 P.2d 627, 
Callender v. District Court for Twentieth Judicial Dist., Ardmore, Carter County.
Discussed

 
1981 OK 87, 632 P.2d 388, 
State ex rel. Stuart v. Rapp
Discussed

 
1950 OK 208, 221 P.2d 795, 203 Okla. 335, 
In re OKLAHOMA TURNPIKE AUTH.
Discussed

 
1943 OK 432, 144 P.2d 447, 195 Okla. 561, 
WIMBERLY v. DEACON
Discussed at Length

Title 3. Aircraft and Airports

 
Cite
Name
Level

 
3 O.S. 374, 
Creation of the Oklahoma Advanced Mobility Pilot Program
Cited

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1531, 
Quo Warranto Abolished - Relief Obtainable by Civil Action - Maintenance by Contestants for Office
Cited

 
12 O.S. 1533, 
Prosecution in the Name of the State or Person Bringing the Action
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 6, 
Officers and Deputies Not to Hold Other Offices
Discussed at Length

Title 61. Public Buildings and Public Works

 
Cite
Name
Level

 
61 O.S. 121, 
Change Orders or Addenda
Cited

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 35.6, 
Required Information Technology Services and Programs
Cited

Title 69. Roads, Bridges, and Ferries

 
Cite
Name
Level

 
69 O.S. 1701, 
Purpose - Authority to Construct, Maintain, Repair and Operate Projects
Cited

 
69 O.S. 1705, 
Authority - Powers and Duties
Discussed

 
69 O.S. 1273, 
Definitions
Cited

 
69 O.S. 1703, 
Oklahoma Turnpike Authority - Corporate Body - Instrumentality of State - Liabilities - Members - Officers - Surety Bonds - Compensation
Cited

 
69 O.S. 1717, 
Project to Become Part of State Highway System - Continuation of Tolls Until Bonds are Paid
Cited

 
69 O.S. 4002, 
Department of Transportation and the Transportation Commission - Creation
Discussed

 
69 O.S. 4007, 
Director - Powers and Duties
Cited

 
69 O.S. 4010, 
Turnpike Authority
Cited

Title 73. State Capital and Capitol Building

 
Cite
Name
Level

 
73 O.S. 152, 
Authority Created - Membership - Officers - Quorum - Bond
Cited

Title 74. State Government

 
Cite
Name
Level

 
74 O.S. 10.3, 
Creation of Cabinet System - Cabinet Secretaries
Cited

Title 75. Statutes and Reports

 
Cite
Name
Level

 
75 O.S. 303, 
Adoption, Amendment or Repeal of Rule - Procedure
Cited

 
75 O.S. 308.2, 
Effect of Promulgated Rule
Cited